**CORRIGAN et al., Appellees,**

v.

**ILLUMINATING COMPANY, Appellant.**

[Cite as *Corrigan v. Illum. Co.,* 175 Ohio App.3d 360, 2008-Ohio-684.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 89402.

Decided Feb. 21, 2008.

362

Lester S. Potash, for appellee.

Roetzel & Andress, LPA, Denise M. Hasbrook, Alisa W. Wright, and Donald S. Scherzer, for appellant.

MARY EILEEN KILBANE, Judge.

{¶ 1} On July 9, 2004, plaintiffs-appellees, Dennis Corrigan and Mary–Martha Corrigan ("the Corrigans"), filed a complaint for injunctive relief against defendant-appellant, The Illuminating Company ("Illuminating Company"), and also filed an ex parte motion for a temporary restraining order and for a preliminary injunction. The Corrigans sought to enjoin the Illuminating Company from clear-cutting a silver maple tree located at the rear of their property.

{¶ 2} On July 9, 2004, the trial court granted the Corrigans' ex parte motion for a temporary restraining order and enjoined the Illuminating Company and its employees and/or agents from removing the silver maple tree on the Corrigans' property located at 4520 Outlook Drive in Brooklyn, Ohio. The trial court also ordered that the temporary restraining order remain in full force and effect until a determination was made regarding the Corrigans' motion for a preliminary injunction.

{¶ 3} On July 14 and 15, 2004, the trial court conducted a hearing on the Corrigans' motion for a preliminary injunction.

{¶ 4} On August 27, 2004, the Illuminating Company filed a motion to dismiss for lack of subject-matter jurisdiction, which was denied by the trial court.

{¶ 5} On September 7, 2004, the trial court granted the Corrigans leave to amend their complaint to include a nuisance claim.

{¶ 6} On January 10, 2007, the trial court granted the Corrigans permanent injunctive relief, enjoining removal of the silver maple tree at issue.

{¶ 7} On February 7, 2007, the Illuminating Company filed the instant appeal and asserted three assignments of error for our review.

## ASSIGNMENT OF ERROR NUMBER ONE

The court lacked subject matter jurisdiction to critique CEI's [the Illuminating Company's] vegetation management practice for maintaining adequate instrumentalities for providing electric service.

{¶ 8} Appellate courts apply the following standard of review regarding Civ.R. 12(B)(1) motions: "whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock* (1989), 42 Ohio St.3d 77, 537 N.E.2d 641.

{¶ 9} Pursuant to R.C. 4905.26, the Public Utilities Commission of Ohio ("PUCO") has exclusive jurisdiction over matters concerning rates, charges, classifications, and service, and including "practice[s] affecting or relating to any service furnished by the public utility, or in connection with such service." However, contract disputes and pure common-law tort claims are exceptions to PUCO's exclusive jurisdiction and may be brought in a court of common pleas. *State ex rel. Illuminating Co. v. Cuyahoga Cty. Court of Common Pleas,* 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92.

In deciding whether an action is service-related and belongs under PUCO's exclusive jurisdiction, some courts approach the issue by posing two questions. First, is PUCO's administrative expertise required to resolve the issue in dispute? Second, does the act complained of constitute a "practice" normally authorized by the utility? If the answer to either question is in the negative, courts routinely find that those claims fall outside PUCO's exclusive jurisdiction.

*Pacific Indemn. Ins. Co. v. Illum. Co.,* Cuyahoga App. No. 82074, 2003-Ohio-3954, 2003 WL 21710787.

{¶ 10} Here, the act complained of, namely, removing trees within the Illuminating Company's easement, does not require PUCO's administrative expertise to resolve the dispute. What is required is an interpretation of the contractual language of the quitclaim deed establishing the easement at issue, signed in 1945 between the Illuminating Company and the prior owners of the Corrigans' property.

{¶ 11} In fact, the Illuminating Company relies on a similar case in which the jurisdiction of the common pleas court was never even raised by the parties or questioned by the common pleas court. See *Beaumont v. FirstEnergy Corp.,* Geauga App. No. 2004–G–2573, 2004-Ohio-5295, 2004 WL 2804801.

{¶ 12} Therefore, the trial court did not lack subject-matter jurisdiction in the instant case.

{¶ 13} The Illuminating Company's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

The trial court's grant of a permanent injunction was an abuse of discretion.

{¶ 14} The Illuminating Company argues that the trial court abused its discretion when it granted a permanent injunction in favor of the Corrigans. Appellate courts apply an abuse-of-discretion standard when reviewing injunctions. *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 59 O.O. 151, 133 N.E.2d 595. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 15} Courts apply a four-factor test to determine whether injunctive relief is appropriate: first, the likelihood of plaintiff's success on the merits; second, whether issuance of an injunction will prevent irreparable harm to plaintiff; third, what injury to others would be caused by the granting of the injunction; and fourth, whether the public interest is served by granting the injunction. *Corbett v. Ohio Bldg. Auth.* (1993), 86 Ohio App.3d 44, 619 N.E.2d 1145.

{¶ 16} The Illuminating Company argues that it has a clear right under the easement to remove the tree on the Corrigans' property. "The basic definition of an easement is that it is the grant of a use on the land of another." *Alban v. R.K. Co.* (1968), 15 Ohio St.2d 229, 44 O.O.2d 198, 239 N.E.2d 22.

{¶ 17} We must look to the specific language of the easement and determine the intent of the parties to determine whether the Illuminating Company has a clear right to remove the tree at issue:

In determining the intent of the parties to an easement, a court is required to first review the specific wording of the document itself. If the parties' intent is evident from the wording of the document, it is inappropriate for a court to consider any type of parol evidence or apply any rule of construction; under such circumstances, the interpretation of the document is a purely legal matter. On the other hand, if the wording of the easement is not plain and unambiguous, a court is allowed to look beyond the four corners of the document to determine the intent of the parties. In addition, parol evidence can be considered if the document does not contain any specific provision on a matter.

(Citations omitted.) *Beaumont*, Geauga App. No. 2004–G–2573, 2004-Ohio-5295, 2004 WL 2804801.

{¶ 18} The quitclaim deed at issue in the instant case contains some of the same language as one of the easements at issue in *Beaumont* and reads:

Said right and easement shall include the right of the Grantee, its successors and assigns at times to enter upon the right-of-way occupied by said transmission lines * * * with full authority to cut and remove any trees, shrubs, or other obstructions upon the above described property which may interfere or threaten to interfere with the construction, operation and maintenance of said transmission lines.

{¶ 19} The *Beaumont* court found that it need not apply any rules of construction to the language of the easement, because the language was plain and unambiguous. We hold the same here.

{¶ 20} The word "may" in the easement limits the right of the Illuminating Company to cut trees, namely, to those trees that may endanger or interfere with construction, operation, and maintenance of the transmission lines at issue. See *Beaumont,* supra. Therefore, the Illuminating Company does not have the right to remove any and/or all trees within its easement. Conversely, however, the Illuminating Company is not limited to removing trees that lie only as an immediate threat to the transmission lines at issue. Therefore, the Illuminating Company's right to remove trees is limited by the language of the easement.

{¶ 21} Furthermore, the *Beaumont* court concluded, as we do here, that:

[P]ursuant to applicable language of the easements, appellants were only entitled to injunctive relief if they could establish that appellees intended to remove trees which did not pose a possible threat to the transmission system.

*Beaumont,* Geauga App. No. 2004–G–2573, 2004-Ohio-5295, 2004 WL 2804801. Thus, we must determine whether the Corrigans established that the Illuminating Company intended to remove a tree that does not pose a possible threat to the transmission lines, pursuant to the language of the easement.

{¶ 22} In toto, the facts of this case are distinguishable from those in *Beaumont,* in which CEI sought to remove 100 trees. In *Beaumont,* "[A]ppellants [homeowners] failed to submit any evidence to refute the specific testimony of appellees' employees." Here, the Corrigans submitted sufficient evidence to demonstrate that the Illuminating Company's proposed removal of a single tree violated the terms of the easement.

{¶ 23} The Illuminating Company argues that the tree in question may interfere or threaten to interfere with the maintenance and operation of the transmission lines through the Corrigans' property and, thus, they have the right pursuant to the easement to remove the tree. The Illuminating Company produced two witnesses who testified that the Corrigans' tree required removal, namely, its utility arborist and its director of transmission and distribution engineering. The witnesses established that 25 feet of clearance is required between any vegetation and the transmission lines.

{¶ 24} However, after reviewing the entire transcript and all exhibits, including photographs, the Illuminating Company's vegetation-management specifications, and maps, for examples, we find that the trial court did not abuse its discretion in finding that the Corrigans' tree does not pose a possible threat to the transmission lines. The Illuminating Company has not received a single citation as a result of the tree's placement within the easement. Nor has the Illuminating Company experienced problems with the FAA or the Army Corps of Engineers because of the tree.

{¶ 25} The Illuminating Company wrote the Corrigans a letter on July 1, 2004, notifying them of its intention to remove the tree. The Corrigans personally paid to have the tree pruned and to have a slow-growth hormone implanted to prevent any potential future interference with the power lines. Specifically, the Corrigans paid Forest City Tree Protection Company over $1,200 for its services. The community has not experienced any service interruptions since August 13, 2004, when Forest City Tree Protection Company pruned the tree. Almost four years have passed, and there has been no interruption of electrical service in the community.

{¶ 26} Although the tree is large, the base of the tree lies 22.69 feet from the center line, and the branches are also clearly distant from the power lines, even when taking into consideration the maximum sag lines, arc, and other testimony elicited from the Illuminating Company's staff.

{¶ 27} Furthermore, most of the tree's canopy hangs on one side of the tree, away from the power lines and toward the Corrigans' home. Neither party proved which direction the tree would likely fall, if ever, given the size and weight of the tree and the direction of the canopy. However, the Corrigans' arborist expert testified that the tree is not leaning toward the transmission lines.

{¶ 28} Pursuant to *Corbett*, we find the following: the plaintiffs are successful on the merits; they would suffer irreparable harm without issuance of the injunction; little to no injury would be caused by the granting of the injunction; and lastly, public interest is served in maintaining mature trees in their community as well as in continuing to receive quality electrical service by the granting of the injunction in the instant case.

{¶ 29} Therefore, the Illuminating Company's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER THREE

The court's findings of fact on the permanent injunction order were against the manifest weight of the evidence.

{¶ 30} The Illuminating Company argues that the trial court's findings of fact are against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. According to the Ohio Supreme Court:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717.

{¶ 31} We find that in reviewing the entire record, weighing the evidence, and reviewing the credibility of the witnesses, the trial court's judgment in the instant case is supported by competent credible evidence. The Corrigans' tree does not pose a possible threat to the transmission lines at issue.

{¶ 32} To date, the community has not experienced any disruption of electrical service because of the Corrigans' tree. The Illuminating Company has not received a single citation from authorities.

{¶ 33} The Corrigans have worked with and independently of the Illuminating Company to ensure the health of their tree and the safety of the transmission lines. The tree is 22.69 feet from the center line, and the tree branches are currently growing away from the power lines and in the direction of the Corrigans' home. The tree is not leaning toward the transmission lines.

Judgment affirmed.

BLACKMON, J., concurs.

COONEY, P.J., concurs in part and dissents in part.

COLLEEN CONWAY COONEY, Presiding Judge, concurring in part and dissenting in part.

{¶ 34} I concur with the majority's decision to uphold the common pleas court's jurisdiction, but I disagree with its decision to affirm the courts issuance of a permanent injunction.

{¶ 35} The majority appears to require evidence that the Corrigans' tree (which grows in Brooklyn) cannot threaten the transmission line unless the

Illuminating Company first receives a citation or experiences problems with the FAA or the Army Corps of Engineers. Further, the majority relies heavily on the lack of any interruption in electrical service rather than on the threat that the tree "may interfere or threaten to interfere" with the maintenance of the transmission lines, the specific language of the easement at issue.

{¶ 36} The Illuminating Company's utility arborist testified that the Corrigans' tree was near transmission lines, as opposed to distribution lines, so that if service was disrupted because the tree fell, the disruption would affect many people, not just the neighborhood. He opined that the tree could not be sufficiently pruned to maintain five years of clearance. He also testified that the "accepted best practice" used to be pruning, but in 2000, the Illuminating Company changed its accepted best practice to removal.

{¶ 37} The Corrigans' arborist testified that if the tree fell, it would not hit the power lines. However, he conceded that his opinion was based only on visual estimates, because he had not taken any measurements.

{¶ 38} Daniel Neff, an engineer, testified that the tree was 22 feet from the electric wires. He further testified that if the tree fell in the direction of the wires, the tree would hit the wires.

{¶ 39} Richard O'Callaghan, the director of engineering for FirstEnergy, with 24 years of electrical engineering experience, testified that the Illuminating Company attempts to maintain a 25-foot clearance to any vertical object, but it is required to maintain 21 feet of clearance by the National Electric Safety Code. He further testified that the tree "interferes with the maintenance and safe operation of the transmission line" based upon the clearance, location, and height of the tree. He further testified that the tree is higher than the lower and possibly middle conductors and, if the tree were just to be trimmed, it would require that 16 feet be trimmed from it. But in his opinion, the tree must be removed. He explained that twice each year, the Illuminating Company does an aerial survey, and he described the process by which the company decides which trees need to be pruned and which trees need to be removed.

{¶ 40} The overwhelming testimony supported the tree's removal. There was no testimony that the easement did not allow for removal. There was no argument that the easement was invalid. And the only person to testify that the tree was not or would not become a threat was the Corrigans' arborist, who had taken no measurements.

{¶ 41} The Illuminating Company should be permitted to maintain its transmission conductors in accordance with industry guidelines. Since the easement allows for a tree to be removed if it threatens to interfere, the plain language of the contract allows the Illuminating Company to remove the tree.

{¶ 42} Therefore, I would reverse the granting of a permanent injunction and allow the tree to be removed.