**CORRIGAN ET AL., APPELLEES,** *v.* **ILLUMINATING COMPANY, APPELLANT.**

[Cite as *Corrigan v. Illum. Co.,* **122 Ohio St.3d 265, 2009-Ohio-2524.**]

*Public Utilities Commission has exclusive jurisdiction over vegetation-removal dispute between landowner and utility company.*

(No. 2008-0708 — Submitted February 3, 2009 — Decided June 4, 2009.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 89402, 175 Ohio App.3d 360, 2008-Ohio-684.

_____

**LANZINGER, J.**

**I**

**{¶ 1}** At first glance, this case appears to concern the fate of a single tree. The larger issue, however, is who controls that fate – the court of common pleas or the Public Utilities Commission of Ohio.

**{¶ 2}** Appellant, the Illuminating Company ("the company"), is a public utility that provides electric service. In order to provide safe and reliable delivery of electricity, the company must maintain its easements to keep vegetation from coming in contact with electricity lines. On July 2, 2004, appellees, Mary-Martha and Dennis Corrigan, received a letter from the company stating that it was going to remove the silver maple located within its easement on the Corrigans' property because the tree had the potential to interfere with the company's 138,000-volt distribution line.

**{¶ 3}** To prevent the removal of their tree, the Corrigans filed a complaint for injunctive relief against the company in the Cuyahoga County Court of Common Pleas on July 9, 2004. The trial court granted the Corrigans a temporary restraining order that enjoined the company from clear-cutting "trees, shrubs, and other growth which exceed 10 feet or have the potential of reaching

10 feet in height, located within its easement relating to any property on Outlook Drive [the street on which the Corrigans live].”

{¶ 4} The next week, the trial court held a hearing on the motion for preliminary injunction. In its July 29, 2004 order granting a preliminary injunction, the trial court found: “[The company has begun] a ‘clear cut’ policy to deal with vegetation maintenance on its transmission line easements. Such an approach may be a reasonable exercise of [the company’s] authority, but such authority is not unbridled nor is it arbitrary.” It went on to find that evidence had been presented to show that the silver maple did not interfere or threaten to interfere with the transmission lines, and it set a date for a permanent-injunction hearing.

{¶ 5} The company filed a motion to reconsider and a motion to dismiss, arguing in both that the trial court lacked subject-matter jurisdiction because the case fell within the exclusive jurisdiction of the Public Utilities Commission of Ohio (“PUCO”). The court denied these motions. At the end of August 2004, the trial court held a hearing on the complaint for permanent injunctive relief. Two years and four months later, the trial court granted the Corrigans a permanent injunction to enjoin the company from removing the silver maple.

{¶ 6} The company appealed and asserted three assignments of error: (1) the trial court lacked subject-matter jurisdiction, (2) the grant of a permanent injunction was an abuse of discretion, and (3) the findings of facts were against the manifest weight of the evidence. The Eighth District Court of Appeals affirmed. It held that the trial court did not lack subject-matter jurisdiction, because the removal of trees within an easement does not require PUCO’s administrative expertise and the dispute centered on the interpretation of the easement at issue. *Corrigan v. Illum. Co.*, 175 Ohio App.3d 360, 2008-Ohio-684, 887 N.E.2d 363, ¶ 10. In looking at the language of the easement, the appellate court determined that the company’s right to remove trees is limited. Id. at ¶ 20.

2

After noting that (1) the utility had not received a single citation or experienced any problems with the FAA or Army Corps of Engineers as a result of the tree, (2) the Corrigans had personally paid to have the tree pruned and to have a slow-growth hormone implanted, and (3) the community had not experienced any service interruptions due to the Corrigans' tree, the appellate court concluded that the tree does not pose a possible threat to the transmission lines. Id. at ¶ 24-32.

{¶ 7} We accepted the company's discretionary appeal.

## II

{¶ 8} The General Assembly enacted R.C. 4901.01 et seq. to regulate the business activities of public utilities and created PUCO to administer and enforce these provisions. *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 150, 573 N.E.2d 655. R.C. 4905.26 provides that PUCO shall hear complaints filed against public utilities alleging that "any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential." This " 'jurisdiction specifically conferred by statute upon the Public Utilities Commission over public utilities of the state * * * is so complete, comprehensive and adequate as to warrant the conclusion that it is likewise exclusive.' " *State ex rel. N. Ohio Tel. Co. v. Winter* (1970), 23 Ohio St.2d 6, 9, 52 O.O.2d 29, 260 N.E.2d 827, quoting *State ex rel. Ohio Bell Tel. Co. v. Cuyahoga Cty. Court of Common Pleas* (1934), 128 Ohio St. 553, 557, 1 O.O. 99, 192 N.E. 787; see also *Kazmaier*, 61 Ohio St.3d at 152, 573 N.E.2d 655.

**{¶ 9}** The broad jurisdiction of PUCO over service-related matters does not affect "the basic jurisdiction of the court of common pleas * * * in other areas of possible claims against utilities, including pure tort and contract claims." *State ex rel. Ohio Edison Co. v. Shaker* (1994), 68 Ohio St.3d 209, 211, 625 N.E.2d 608. Consequently, we must determine whether the claims raised by the Corrigans in their complaint are within PUCO's exclusive jurisdiction or are pure tort and contract claims that do not require a consideration of statutes and regulations administered and enforced by the commission.

**{¶ 10}** In making this determination, we are not limited by the allegations in the complaint. *State ex rel. Columbia Gas of Ohio, Inc. v. Henson*, 102 Ohio St.3d 349, 2004-Ohio-3208, 810 N.E.2d 953, ¶ 19. Rather, we must review the substance of the claims to determine if service-related issues are involved. Id. at ¶ 20-21. "In other words, 'casting the allegations in the complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court' when the basic claim is one that the commission has exclusive jurisdiction to resolve." *State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶ 21, quoting *Higgins v. Columbia Gas of Ohio, Inc.* (2000), 136 Ohio App. 3d 198, 202, 736 N.E.2d 92.

**{¶ 11}** This court recently adopted a two-part test from *Pacific Indemn. Ins. Co. v. Illum. Co.*, Cuyahoga App. No. 82074, 2003-Ohio-3954, ¶ 15, to determine whether PUCO has exclusive jurisdiction over an action: " 'First, is PUCO's administrative expertise required to resolve the issue in dispute? Second, does the act complained of constitute a practice normally authorized by the utility?'

**{¶ 12}** "If the answer to either question is in the negative, the claim is not within PUCO's exclusive jurisdiction." *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, ¶ 12-13.

**{¶ 13}** Although *Allstate* was decided after the appellate decision in this case, the Eighth District applied *Pacific Indemn.* and determined that the complaint did not fall within PUCO's exclusive jurisdiction: "Here, the act complained of, namely, removing trees within the Illuminating Company's easement, does not require PUCO's administrative expertise to resolve the dispute. What is required is an interpretation of the contractual language of the quitclaim deed establishing the easement at issue * * *." 175 Ohio App.3d 360, 2008-Ohio-684, 887 N.E.2d 363, ¶ 10.

**{¶ 14}** Four months after the Eighth District rendered its decision, the Seventh District Court of Appeals addressed a similar matter. *DeLost v. First Energy Corp.*, 7th Dist. No. 07 MA 194, 2008-Ohio-3086. In *DeLost*, the property owners sought an injunction to prevent Ohio Edison from cutting down white pine trees and other vegetation that had been planted within the utility company's easement. Id. at ¶ 2-3. Based on this court's decision in *State ex rel. Illum. Co.*, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, the appellate court reasoned that when an issue raised in a complaint requires that statutes and/or regulations administered and enforced by PUCO be considered, the issue is not pure contract and is within the exclusive jurisdiction of PUCO. *DeLost*, 2008-Ohio-3086, ¶ 33-35. The court went on to note that the Ohio Administrative Code chapter on electric service and safety standards, Ohio Adm.Code 4901:1-10, requires that utility companies establish a right-of-way vegetation-control program to maintain safe and reliable service (Ohio Adm.Code 4901:1-10-27(E)). Id. at ¶ 39. Because vegetation management within an easement is necessary to ensure that reliable service is provided to consumers, the *DeLost* court concluded that cutting down vegetation is a practice relating to service as contemplated by R.C. 4905.26 and that it fell within PUCO's exclusive jurisdiction. Id. at ¶ 40. Therefore we must determine whether the court of appeals in this case or in *DeLost* is correct.

{¶ 15} We agree with the *DeLost* court that this type of case falls within the exclusive jurisdiction of PUCO. The first part of the *Allstate* test asks whether PUCO's administrative expertise is required to resolve the issue in dispute. Ohio Adm.Code 4901:1-10-27(D)(2) requires that each electric utility inspect its electric-transmission facilities (circuits and equipment) at least once every year. The inspections are to be conducted in accordance with written programs. Ohio Adm.Code 4901:1-10-27(E)(1). "These programs shall establish preventative requirements for the electric utility to maintain safe and reliable service. Programs shall include, but are not limited to, the following facilities: * * * (f) Right-of-way vegetation control * * *." Id. The vegetation-management plan takes a number of factors into consideration such as arcing, sagging, and line voltage as well as regulatory requirements from OSHA, FAA, and the Army Corps of Engineers. In addition, electric utilities are required to comply with the American National Standard Institute's "National Electrical Safety Code." Ohio Adm.Code 4901:1-10-06. Finally, electric utilities are required to submit their programs to the director of the consumer-services department for review and acceptance. Ohio Adm.Code 4901:1-10-27(E)(2). If the electric utility and the director cannot agree on the details and contents of the plan, the electric utility is required to file a complaint with PUCO. Id. The company's decision to remove a tree is governed by its vegetation-management plan, which is regulated by PUCO. Therefore, we conclude that PUCO's administrative expertise is required to resolve the issue of whether removal of a tree is reasonable.

{¶ 16} The second part of the *Allstate* test is whether the act complained of constitutes a practice normally authorized by the utility. Vegetation management is necessary to maintain safe and reliable electrical service. See Ohio Adm.Code 4901:1-10-27(E)(2). Thus, the second part of the test is satisfied. Having answered both *Allstate* questions in the affirmative, we determine that this case falls within the exclusive jurisdiction of PUCO.

**{¶ 17}** Despite the Corrigans' argument that we are presented with a pure contract matter, this case is not about an easement. There is no question that the company has a valid easement and that the tree is within the easement. Furthermore, the language of the easement is unambiguous and provides the company with the following rights:

**{¶ 18}** "Said right and easement shall include the right of the Grantee, its successors and assigns, at all times to enter upon the right of way occupied by said transmission lines for the purpose of constructing, inspecting, protecting, repairing or removing said towers, wires, fixtures and appliances, together with *full authority to cut and remove any trees, shrubs or other obstructions* upon the above described property *which may interfere or threaten to interfere with the* construction, operation and *maintenance of said transmission lines*." (Emphasis added.)

**{¶ 19}** This language grants the company the right to remove any tree within the easement that could pose a threat to the transmission lines. See also *Beaumont v. FirstEnergy Corp.*, 11th Dist. No. 2004-G-2573, 2004-Ohio-5295, ¶ 22.

**{¶ 20}** It is clear from the record that the Corrigans are not contesting the meaning of the language of the easement but rather the company's decision to remove the tree instead of pruning it. In 2000, the company changed its vegetation-management plan so that its policy was to remove vegetation that threatened to interfere with its lines. Although the Corrigans disagree with this policy, the broad language of the easement granted to the company allows the utility to remove trees within its easement that may interfere or threaten to interfere with its power lines. Therefore, the Corrigans' complaint with the decision to remove the tree is really an attack on the company's vegetation-management plan. That type of complaint is a service-related issue, which is within PUCO's exclusive jurisdiction.

### III

**{¶ 21}** We agree with the *DeLost* court. The relevant sections of the Ohio Administrative Code show that vegetation management is manifestly service-related. *DeLost*, 2008-Ohio-3086, ¶ 39-40. R.C. 4905.26 specifically confers exclusive jurisdiction upon PUCO to determine whether any service provided by a public utility is in any respect unjust, unreasonable, or in violation of the law. *Columbia Gas*, 102 Ohio St.3d 349, 2004-Ohio-3208, 810 N.E.2d 953, at ¶ 16. Therefore, whether the company's decision that the silver maple interferes or threatens to interfere with its transmission line is reasonable is a service-related question within PUCO's exclusive jurisdiction.

**{¶ 22}** The judgment of the Cuyahoga County Court of Appeals is reversed.

Judgment reversed.

MOYER, C.J., and LUNDBERG STRATTON and O'CONNOR, JJ., concur.

PFEIFER, O'DONNELL, and CUPP, JJ., dissent.

————————————

**O'DONNELL, J., dissenting.**

**{¶ 23}** I respectfully dissent.

**{¶ 24}** The central issue in this case is whether the Public Utilities Commission of Ohio ("PUCO") has exclusive jurisdiction over the Corrigans' claim that the Illuminating Company does not have the right to cut down a silver maple tree that stands on the Corrigans' property, within an easement owned by the utility. Unlike the majority, I am of the view that the utility's right to remove the Corrigans' tree depends on the terms of the easement, not the utility's internal vegetation-management plan. Because the PUCO has no special expertise with respect to interpretation of an easement, the court of common pleas properly exercised jurisdiction over this action for a permanent injunction to prevent the removal of the tree.

8

{¶ 25} In addition, I would affirm the appellate court's decision that the trial court did not abuse its discretion when enjoining the utility from removing this tree. We are obligated to give broad deference to the trial court's factual findings, and in my view, the record contains sufficient evidence to support the trial court's finding that the Corrigans' tree does not threaten the transmission line.

{¶ 26} The Illuminating Company operates an electric transmission line that crosses the Corrigans' property, and pursuant to an easement, the utility has the right "at all times to enter upon the right-of-way occupied by said transmission lines * * * with full authority to cut and remove any trees, shrubs, or other obstructions * * * *which may interfere or threaten to interfere with the construction, operation and maintenance of said transmission lines*." (Emphasis added.)

{¶ 27} A silver maple tree has stood within the bounds of this easement for at least the last 50 years. From 1975, when the Corrigans' bought the property, until 2000, utility employees would enter their property when necessary and prune the 50-foot tree away from the transmission line. In 2000, however, the utility changed its policy in favor of removing any vegetation from within its easements. Thus, the utility informed the Corrigans in 2004 that it intended to remove their silver maple, and in response, they filed the instant action in the Cuyahoga County Common Pleas Court seeking a permanent injunction against the Illuminating Company.

{¶ 28} The first issue before us is whether the PUCO has exclusive jurisdiction over the Corrigans' claim, and as the majority acknowledges, our decision in *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, sets forth the applicable test in this regard: " 'First, is PUCO's administrative expertise required to resolve the issue in dispute? Second, does the act complained of constitute a practice normally authorized by

the utility?' " Id. at ¶ 12-13, quoting *Pacific Indemn. Ins. Co. v. Illum. Co.*, Cuyahoga App. No. 82074, 2003-Ohio-3954, ¶ 15. As we stated, "If the answer to either question is in the negative, the claim is not within PUCO's exclusive jurisdiction." Id.

{¶ 29} In concluding that the PUCO has special expertise necessary to resolve this case, the majority characterizes the Corrigans' claim as "an attack on the company's vegetation-management plan," which the utility is required to have pursuant to Ohio Adm.Code 4901:1-10-27(E). Majority opinion at ¶ 20. In my view, however, the central issue raised by the Corrigans' complaint is whether their maple tree "may interfere or threaten to interfere" with the transmission line. This requires interpretation and application of the terms of the easement, not the utility's vegetation-management plan, and as with any written agreement, the interpretation of an easement depends on its plain language. See *Murray v. Lyon* (1994), 95 Ohio App.3d 215, 219, 642 N.E.2d 41, citing 36 Ohio Jurisprudence 3d (1982) 414, Easements and Licenses, Section 25. Moreover, the fact that Ohio Adm.Code 4901:1-10-27(E) requires a utility to have a vegetation-management plan does not mean that the Illuminating Company is authorized to implement that plan without regard to the terms of an easement.

{¶ 30} The PUCO has no special expertise with respect to the determination of rights under an easement, and thus it does not have exclusive jurisdiction here. As we explained in *Allstate*, "PUCO is not a court and has no power to judicially ascertain and determine legal rights and liabilities." 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, ¶ 6, citing *State ex rel. Dayton Power & Light Co. v. Riley* (1978), 53 Ohio St.2d 168, 170, 7 O.O.3d 317, 373 N.E.2d 385. Furthermore, the fact "[t]hat PUCO has exclusive jurisdiction over service-related matters *does not diminish* 'the basic jurisdiction of the court of common pleas * * * in other areas of possible claims against utilities, including

pure tort and contract claims.' " (Emphasis added.) Id., quoting *State ex rel. Ohio Edison Co. v. Shaker* (1994), 68 Ohio St.3d 209, 211, 625 N.E.2d 608.

**{¶ 31}** Accordingly, I would answer the first question in the *Allstate* analysis in the negative and hold that the trial court properly exercised jurisdiction over the Corrigans' action in this case.

**{¶ 32}** Second, I would affirm the appellate court's determination that the trial court did not abuse its discretion when it enjoined the utility from removing the maple tree.

**{¶ 33}** As we stated in *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, "[t]he grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." Id., citing *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 125, 59 O.O. 151, 133 N.E.2d 595 ("unless there is a plain abuse of discretion on the part of trial courts, in granting or refusing injunctions, reviewing courts will not disturb such judgments").

**{¶ 34}** Moreover, we have emphasized that a reviewing court "must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court." *Myers v. Garson* (1993), 66 Ohio St.3d 610, 616, 614 N.E.2d 742. See also *Fabe v. Prompt Fin., Inc.* (1994), 69 Ohio St.3d 268, 276, 631 N.E.2d 614. Also, as we explained in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, under the civil manifest-weight-of-the-evidence standard, "a court has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the trial judge had an opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the

proffered testimony.' " Id. at ¶ 24, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 35} In this case, the trial court found that the Corrigans' maple tree does not threaten the transmission line. On appeal, the court of appeals reviewed the maps, photos, exhibits, and transcripts of expert and lay witnesses' testimony in the record, and it stated that "the branches [of the maple tree] are * * * clearly distant from the power lines, even when taking into consideration the maximum sag lines, arc, and other testimony elicited from the Illuminating Company's staff." *Corrigan v. Illum. Co.*, 175 Ohio App.3d 360, 2008-Ohio-684, 887 N.E.2d 363, ¶ 25-26. Moreover, the appellate court observed that "most of the tree's canopy hangs on one side of the tree, away from the power lines and toward the Corrigans' home. Neither party proved which direction the tree would likely fall, if ever, given the size and weight of the tree and the direction of the canopy. However, the Corrigans' arborist expert testified that the tree is not leaning toward the transmission lines." Id. at ¶ 27. As the appellate court also recognized, the Corrigans have paid more than $1,200 for pruning and application of a hormone that will slow or stop the tree's growth. Id. at ¶ 25.

{¶ 36} Thus, in my view, the record contains at least "some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court." *Garson*, 66 Ohio St.3d at 616, 614 N.E.2d 742. Accordingly, the trial court did not clearly abuse its discretion, and we may not substitute our judgment with respect to its findings of fact and conclusions of law. Id.

{¶ 37} For these reasons, I respectfully dissent and would affirm the decision of the court of appeals in this case.

PFEIFER, J., concurs in the foregoing opinion.

_____

**CUPP, J., dissenting.**

**{¶ 38}** I respectfully dissent from the majority's conclusion that determining the scope of the easement held by the electric utility company in this case involves jurisdiction granted exclusively to the Public Utilities Commission of Ohio ("PUCO"). In this regard, I join the dissenting opinion of Justice O'Donnell.

**{¶ 39}** However, on the determination that the easement did not permit removal of the tree at issue herein, I agree with the dictum in the majority opinion that the trial court abused its discretion in applying the law to the facts of this case. In this regard, I agree with the well-reasoned dissent from the appellate court opinion in this case:

**{¶ 40}** "The majority appears to require evidence that the Corrigans' tree * * * cannot threaten the transmission line unless the Illuminating Company first receives a citation or experiences problems with the FAA or the Army Corps of Engineers. Further, the majority relies heavily on the lack of any interruption in electrical service rather than on the threat that the tree 'may interfere or threaten to interfere' with the maintenance of the transmission lines, the specific language of the easement at issue.

**{¶ 41}** "The Illuminating Company's utility arborist testified that the Corrigans' tree was near transmission lines, as opposed to distribution lines, so that if service was disrupted because the tree fell, the disruption would affect many people, not just the neighborhood. He opined that the tree could not be sufficiently pruned to maintain five years of clearance. He also testified that the 'accepted best practice' used to be pruning, but in 2000, the Illuminating Company changed its accepted best practice to removal.

**{¶ 42}** "The Corrigans' arborist testified that if the tree fell, it would not hit the power lines. However, he conceded that his opinion was based only on visual estimates, because he had not taken any measurements.

**{¶ 43}** "Daniel Neff, an engineer, testified that the tree was 22 feet from the electric wires. He further testified that if the tree fell in the direction of the wires, the tree would hit the wires.

**{¶ 44}** "Richard O'Callaghan, the director of engineering for FirstEnergy, with 24 years of electrical engineering experience, testified that the Illuminating Company attempts to maintain a 25-foot clearance to any vertical object, but it is required to maintain 21 feet of clearance by the National Electric Safety Code. He further testified that the tree 'interferes with the maintenance and safe operation of the transmission line' based upon the clearance, location, and height of the tree. He further testified that the tree is higher than the lower and possibly middle conductors and, if the tree were just to be trimmed, it would require that 16 feet be trimmed from it. But in his opinion, the tree must be removed. He explained that twice each year, the Illuminating Company does an aerial survey, and he described the process by which the company decides which trees need to be pruned and which trees need to be removed.

**{¶ 45}** "The overwhelming testimony supported the tree's removal. There was no testimony that the easement did not allow for removal. There was no argument that the easement was invalid. And the only person to testify that the tree was not or would not become a threat was the Corrigans' arborist, who had taken no measurements.

**{¶ 46}** "The Illuminating Company should be permitted to maintain its transmission conductors in accordance with industry guidelines. Since the easement allows for a tree to be removed if it threatens to interfere, the plain language of the contract allows the Illuminating Company to remove the tree." *Corrigan v. Illum. Co.*, 175 Ohio App.3d 360, 2008-Ohio-684, 887 N.E.2d 363, ¶ 35-41 (Cooney, P.J., dissenting).

**{¶ 47}** Therefore, I would affirm that part of the judgment of the appellate court that holds that jurisdiction to determine the issues raised in this case resides

in the courts and not the PUCO, and I would reverse that portion of the judgment below that affirms the order granting a permanent injunction preventing the tree within the easement from being removed.

_____

Lester S. Potash, for appellees.

Roetzel & Andress, Denise M. Hasbrook, Donald S. Scherzer, and Emily Ciecka Wilcheck, for appellant.

_____