O’Donnell, J.,
dissenting.
{¶ 23} I respectfully dissent.
{¶ 24} The central issue in this case is whether the Public Utilities Commission of Ohio (“PUCO”) has exclusive jurisdiction over the Corrigans’ claim that the Illuminating Company does not have the right to cut down a silver maple tree that stands on the Corrigans’ property, within an easement owned by the utility. Unlike the majority, I am of the view that the utility’s right to remove the Corrigans’ tree depends on the terms of the easement, not the utility’s internal vegetation-management plan. Because the PUCO has no special expertise with respect to interpretation of an easement, the court of common pleas properly exercised jurisdiction over this action for a permanent injunction to prevent the removal of the tree.
{¶ 25} In addition, I would affirm the appellate court’s decision that the trial court did not abuse its discretion when enjoining the utility from removing this tree. We are obligated to give broad deference to the trial court’s factual findings, and in my view, the record contains sufficient evidence to support the trial court’s finding that the Corrigans’ tree does not threaten the transmission line.
{¶ 26} The Illuminating Company operates an electric transmission line that crosses the Corrigans’ property, and pursuant to an easement, the utility has the right “at all times to enter upon the right-of-way occupied by said transmission lines * * * with full authority to cut and remove any trees, shrubs, or other obstructions * * * which may interfere or threaten to interfere with the construction, operation and maintenance of said transmission lines.” (Emphasis added.)
*271 {¶ 27} A silver maple tree has stood within the bounds of this easement for at least the last 50 years. From 1975, when the Corrigans bought the property, until 2000, utility employees would enter their property when necessary and prune the 50-foot tree away from the transmission line. In 2000, however, the utility changed its policy in favor of removing any vegetation from within its easements. Thus, the utility informed the Corrigans in 2004 that it intended to remove their silver maple, and in response, they filed the instant action in the Cuyahoga County Common Pleas Court seeking a permanent injunction against the Illuminating Company.
{¶ 28} The first issue before us is whether the PUCO has exclusive jurisdiction over the Corrigans’ claim, and as the majority acknowledges, our decision in Allstate Ins. Co. v. Cleveland Elec. Illum. Co., 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, sets forth the applicable test in this regard: “ ‘First, is PUCO’s administrative expertise required to resolve the issue in dispute? Second, does the act complained of constitute a practice normally authorized by the utility?’ ” Id. at ¶ 12-13, quoting Pacific Indemn. Ins. Co. v. Illum. Co., Cuyahoga App. No. 82074, 2003-Ohio-3954, 2003 WL 21710787, ¶ 15. As we stated, “If the answer to either question is in the negative, the claim is not within PUCO’s exclusive jurisdiction.” Id.
{¶ 29} In concluding that the PUCO has special expertise necessary to resolve this case, the majority characterizes the Corrigans’ claim as “an attack on the company’s vegetation-management plan,” which the utility is required to have pursuant to Ohio Adm.Code 4901:1-10-27(E). Majority opinion at ¶ 20. In my view, however, the central issue raised by the Corrigans’ complaint is whether their maple tree “may interfere or threaten to interfere” with the transmission line. This requires interpretation and application of the terms of the easement, not the utility’s vegetation-management plan, and as with any written agreement, the interpretation of an easement depends on its plain language. See Murray v. Lyon (1994), 95 Ohio App.3d 215, 219, 642 N.E.2d 41, citing 36 Ohio Jurisprudence 3d (1982) 414, Easements and Licenses, Section 25. Moreover, the fact that Ohio Adm.Code 4901:1-10-27(E) requires a utility to have a vegetation-management plan does not mean that the Illuminating Company is authorized to implement that plan without regard to the terms of an easement.
{¶ 30} The PUCO has no special expertise with respect to the determination of rights under an easement, and thus it does not have exclusive jurisdiction here. As we explained in Allstate, “PUCO is not a court and has no power to judicially ascertain and determine legal rights and liabilities.” 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, ¶ 6, citing State ex rel. Dayton Power & Light Co. v. Riley (1978), 53 Ohio St.2d 168, 170, 7 O.O.3d 317, 373 N.E.2d 385. Furthermore, the fact “[t]hat PUCO has exclusive jurisdiction over service-related matters does *272 not diminish ‘the basic jurisdiction of the court of common pleas * * * in other areas of possible claims against utilities, including pure tort and contract claims.’ ” (Emphasis added.) Id., quoting State ex rel. Ohio Edison Co. v. Shaker (1994), 68 Ohio St.3d 209, 211, 625 N.E.2d 608.
{¶ 31} Accordingly, I would answer the first question in the Allstate analysis in the negative and hold that the trial court properly exercised jurisdiction over the Corrigans’ action in this case.
{¶ 32} Second, I would affirm the appellate court’s determination that the trial court did not abuse its discretion when it enjoined the utility from removing the maple tree.
{¶ 33} As we stated in Garono v. State (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, “[t]he grant or denial of an injunction is solely within the trial court’s discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion.” Id., citing Perkins v. Quaker City (1956), 165 Ohio St. 120, 125, 59 O.O. 151, 133 N.E.2d 595 (“unless there is a plain abuse of discretion on the part of trial courts, in granting or refusing injunctions, reviewing courts will not disturb such judgments”).
{¶ 34} Moreover, we have emphasized that a reviewing court “must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court.” Myers v. Garson (1993), 66 Ohio St.3d 610, 616, 614 N.E.2d 742. See also Fabe v. Prompt Fin., Inc. (1994), 69 Ohio St.3d 268, 276, 631 N.E.2d 614. Also, as we explained in State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, under the civil manifest-weight-of-the-evidence standard, “a court has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the trial judge had an opportunity ‘to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.’ ” Id. at ¶ 24, quoting Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.
{¶ 35} In this case, the trial court found that the Corrigans’ maple tree does not threaten the transmission line. On appeal, the court of appeals reviewed the maps, photos, exhibits, and transcripts of expert and lay witnesses’ testimony in the record, and it stated that “the branches [of the maple tree] are * * * clearly distant from the power lines, even when taking into consideration the maximum sag lines, arc, and other testimony elicited from the Illuminating Company’s staff.” Corrigan v. Illum. Co., 175 Ohio App.3d 360, 2008-Ohio-684, 887 N.E.2d 363, ¶ 25-26. Moreover, the appellate court observed that “most of the tree’s canopy hangs on one side of the tree, away from the power lines and toward the Corrigans’ home. Neither party proved which direction the tree would likely fall, *273 if ever, given the size and weight of the tree and the direction of the canopy. However, the Corrigans’ arborist expert testified that the tree is not leaning toward the transmission lines.” Id. at ¶ 27. As the appellate court also recognized, the Corrigans have paid more than $1,200 for pruning and application of a hormone that will slow or stop the tree’s growth. Id. at ¶ 25.
{¶ 36} Thus, in my view, the record contains at least “some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court.” Garson, 66 Ohio St.3d at 616, 614 N.E.2d 742. Accordingly, the trial court did not clearly abuse its discretion, and we may not substitute our judgment with respect to its findings of fact and conclusions of law. Id.
{¶ 37} For these reasons, I respectfully dissent and would affirm the decision of the court of appeals in this case.
Pfeifer, J., concurs in the foregoing opinion.
Cupp, J.,
dissenting.
{¶ 38} I respectfully dissent from the majority’s conclusion that determining the scope of the easement held by the electric utility company in this case involves jurisdiction granted exclusively to the Public Utilities Commission of Ohio (“PUCO”). In this regard, I join the dissenting opinion of Justice O’Donnell.
{¶ 39} However, on the determination that the easement did not permit removal of the tree at issue herein, I agree with the dictum in the majority opinion that the trial court abused its discretion in applying the law to the facts of this case. In this regard, I agree with the well-reasoned dissent from the appellate court opinion in this case:
{¶40} “The majority appears to require evidence that the Corrigans’ tree * * * cannot threaten the transmission line unless the Illuminating Company first receives a citation or experiences problems with the FAA or the Army Corps of Engineers. Further, the majority relies heavily on the lack of any interruption in electrical service rather than on the threat that the tree ‘may interfere or threaten to interfere’ with the maintenance of the transmission lines, the specific language of the easement at issue.
{¶ 41} “The Illuminating Company’s utility arborist testified that the Corrigans’ tree was near transmission lines, as opposed to distribution lines, so that if service was disrupted because the tree fell, the disruption would affect many people, not just the neighborhood. He opined that the tree could not be sufficiently pruned to maintain five years of clearance. He also testified that the *274 ‘accepted best practice’ used to be pruning, but in 2000, the Illuminating Company changed its accepted best practice to removal.
{¶ 42} “The Corrigans’ arborist testified that if the tree fell, it would not hit the power lines. However, he conceded that his opinion was based only on visual estimates, because he had not taken any measurements.
{¶ 43} “Daniel Neff, an engineer, testified that the tree was 22 feet from the electric wires. He further testified that if the tree fell in the direction of the wires, the tree would hit the wires.
{¶ 44} “Richard O’Callaghan, the director of engineering for FirstEnergy, with 24 years of electrical engineering experience, testified that the Illuminating Company attempts to maintain a 25-foot clearance to any vertical object, but it is required to maintain 21 feet of clearance by the National Electric Safety Code. He further testified that the tree ‘interferes with the maintenance and safe operation of the transmission line’ based upon the clearance, location, and height of the tree. He further testified that the tree is higher than the lower and possibly middle conductors and, if the tree were just to be trimmed, it would require that 16 feet be trimmed from it. But in his opinion, the tree must be removed. He explained that twice each year, the Illuminating Company does an aerial survey, and he described the process by which the company decides which trees need to be pruned and which trees need to be removed.
(¶ 45} “The overwhelming testimony supported the tree’s removal. There was no testimony that the easement did not allow for removal. There was no argument that the easement was invalid. And the only person to testify that the tree was not or would not become a threat was the Corrigans’ arborist, who had taken no measurements.
{¶ 46} “The Illuminating Company should be permitted to maintain its transmission conductors in accordance with industry guidelines. Since the easement allows for a tree to be removed if it threatens to interfere, the plain language of the contract allows the Illuminating Company to remove the tree.” Corrigan v. Illum. Co., 175 Ohio App.3d 360, 2008-Ohio-684, 887 N.E.2d 363, ¶ 35-41 (Cooney, P.J., dissenting).
{¶ 47} Therefore, I would affirm that part of the judgment of the appellate court that holds that jurisdiction to determine the issues raised in this case resides in the courts and not the PUCO, and I would reverse that portion of the judgment below that affirms the order granting a permanent injunction preventing the tree within the easement from being removed.
*275 Lester S. Potash, for appellees.
Roetzel & Andress, Denise M. Hasbrook, Donald S. Scherzer, and Emily Ciecka Wilcheck, for appellant.