Lanzinger, J.
I
{¶ 1} At first glance, this case appears to concern the fate of a single tree. The larger issue, however, is who controls that fate — the court of common pleas or the Public Utilities Commission of Ohio.
{¶ 2} Appellant, the Illuminating Company (“the company”), is a public utility that provides electric service. In order to provide safe and reliable delivery of electricity, the company must maintain its easements to keep vegetation from coming in contact with electricity lines. On July 2, 2004, appellees, Mary-Martha and Dennis Corrigan, received a letter from the company stating that it was going to remove the silver maple located within its easement on the Corrigans’ property because the tree had the potential to interfere with the company’s 138,000-volt distribution line.
{¶ 3} To prevent the removal of their tree, the Corrigans filed a complaint for injunctive relief against the company in the Cuyahoga County Court of Common Pleas on July 9, 2004. The trial court granted the Corrigans a temporary restraining order that enjoined the company from clear-cutting “trees, shrubs, and other growth which exceed 10 feet or have the potential of reaching 10 feet in height, located within its easement relating to any property on Outlook Drive [the street on which the Corrigans live].”
{¶ 4} The next week, the trial court held a hearing on the motion for preliminary injunction. In its July 29, 2004 order granting a preliminary injunction, the trial court found: “[The company has begun] a ‘clear cut’ policy to deal with vegetation maintenance on its transmission line easements. Such an approach may be a reasonable exercise of [the company’s] authority, but such authority is not unbridled nor is it arbitrary.” It went on to find that evidence had been presented to show that the silver maple did not interfere or threaten to *266 interfere with the transmission lines, and it set a date for a permanent-injunction hearing.
{¶ 5} The company filed a motion to reconsider and a motion to dismiss, arguing in both that the trial court lacked subject-matter jurisdiction because the case fell within the exclusive jurisdiction of the Public Utilities Commission of Ohio (“PUCO”). The court denied these motions. At the end of August 2004, the trial court held a hearing on the complaint for permanent injunctive relief. Two years and four months later, the trial court granted the Corrigans a permanent injunction to enjoin the company from removing the silver maple.
{¶ 6} The company appealed and asserted three assignments of error: (1) the trial court lacked subject-matter jurisdiction, (2) the grant of a permanent injunction was an abuse of discretion, and (3) the findings of facts were against the manifest weight of the evidence. The Eighth District Court of Appeals affirmed. It held that the trial court did not lack subject-matter jurisdiction, because the removal of trees within an easement does not require PUCO’s administrative expertise and the dispute centered on the interpretation of the easement at issue. Corrigan v. Illum. Co., 175 Ohio App.3d 360, 2008-Ohio-684, 887 N.E.2d 363, ¶ 10. In looking at the language of the easement, the appellate court determined that the company’s right to remove trees is limited. Id. at ¶ 20. After noting that (1) the utility had not received a single citation or experienced any problems with the FAA or Army Corps of Engineers as a result of the tree, (2) the Corrigans had personally paid to have the tree pruned and to have a slow-growth hormone implanted, and (3) the community had not experienced any service interruptions due to the Corrigans’ tree, the appellate court concluded that the tree does not pose a possible threat to the transmission lines. Id. at ¶ 24-32.
{¶ 7} We accepted the company’s discretionary appeal.
II
{¶ 8} The General Assembly enacted R.C. 4901.01 et seq. to regulate the business activities of public utilities and created PUCO to administer and enforce these provisions. Kazmaier Supermarket, Inc. v. Toledo Edison Co. (1991), 61 Ohio St.3d 147, 150, 573 N.E.2d 655. R.C. 4905.26 provides that PUCO shall hear complaints filed against public utilities alleging that “any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendei*ed, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminate *267 ry, or unjustly preferential.” This “ ‘jurisdiction specifically conferred by statute upon the Public Utilities Commission over public utilities of the state * * * is so complete, comprehensive and adequate as to warrant the conclusion that it is likewise exclusive.’ ” State ex rel. N. Ohio Tel. Co. v. Winter (1970), 23 Ohio St.2d 6, 9, 52 O.O.2d 29, 260 N.E.2d 827, quoting State ex rel. Ohio Bell Tel. Co. v. Cuyahoga Cty. Court of Common Pleas (1934), 128 Ohio St. 553, 557, 1 O.O. 99, 192 N.E. 787; see also Kazmaier, 61 Ohio St.3d at 152, 573 N.E.2d 655.
{¶ 9} The broad jurisdiction of PUCO over service-related matters does not affect “the basic jurisdiction of the court of common pleas * * * in other areas of possible claims against utilities, including pure tort and contract claims.” State ex rel. Ohio Edison Co. v. Shaker (1994), 68 Ohio St.3d 209, 211, 625 N.E.2d 608. Consequently, we must determine whether the claims raised by the Corrigans in their complaint are within PUCO’s exclusive jurisdiction or are pure tort and contract claims that do not require a consideration of statutes and regulations administered and enforced by the commission.
{¶ 10} In making this determination, we are not limited by the allegations in the complaint. State ex rel. Columbia Gas of Ohio, Inc. v. Henson, 102 Ohio St.3d 349, 2004-Ohio-3208, 810 N.E.2d 953, ¶ 19. Rather, we must review the substance of the claims to determine if service-related issues are involved. Id. at ¶ 20-21. “In other words, ‘casting the allegations in the complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court’ when the basic claim is one that the commission has exclusive jurisdiction to resolve.” State ex rel. Ilium. Co. v. Cuyahoga Cty. Court of Common Pleas, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶21, quoting Higgins v. Columbia Gas of Ohio, Inc. (2000), 136 Ohio App.3d 198, 202, 736 N.E.2d 92.
{¶ 11} This court recently adopted a two-part test from Pacific Indemn. Ins. Co. v. Illum. Co., Cuyahoga App. No. 82074, 2003-Ohio-3954, 2003 WL 21710787, ¶ 15, to determine whether PUCO has exclusive jurisdiction over an action: “ ‘First, is PUCO’s administrative expertise required to resolve the issue in dispute? Second, does the act complained of constitute a practice normally authorized by the utility?’
{¶ 12} “If the answer to either question is in the negative, the claim is not within PUCO’s exclusive jurisdiction.” Allstate Ins. Co. v. Cleveland Elec. Illum. Co., 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, ¶ 12-13.
{¶ 13} Although Allstate was decided after the appellate decision in this case, the Eighth District applied Pacific Indemn. and determined that the complaint did not fall within PUCO’s exclusive jurisdiction: “Here, the act complained of, namely, removing trees within the Illuminating Company’s easement, does not require PUCO’s administrative expertise to resolve the dispute. What is required is an interpretation of the contractual language of the quitclaim deed *268 establishing the easement at issue * * 175 Ohio App.3d 360, 2008-Ohio-684, 887 N.E.2d 363, ¶ 10.
{¶ 14} Four months after the Eighth District rendered its decision, the Seventh District Court of Appeals addressed a similar matter. DeLost v. First Energy Corp., 7th Dist. No. 07 MA 194, 2008-Ohio-3086, 2008 WL 2486506. In DeLost, the property owners sought an injunction to prevent Ohio Edison from cutting down white pine trees and other vegetation that had been planted within the utility company’s easement. Id. at ¶ 2-3. Based on this court’s decision in State ex rel. Illum. Co., 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, the appellate court reasoned that when an issue raised in a complaint requires that statutes and/or regulations administered and enforced by PUCO be considered, the issue is not pure contract and is within the exclusive jurisdiction of PUCO. DeLost, 2008-Ohio-3086, 2008 WL 2486506, ¶ 33-35. The court went on to note that the Ohio Administrative Code chapter on electric service and safety standards, Ohio Adm.Code 4901:1-10, requires that utility companies establish a right-of-way vegetation-control program to maintain safe and reliable service (Ohio Adm.Code 4901:1-10-27(E)). Id. at ¶ 39. Because vegetation management within an easement is necessary to ensure that reliable service is provided to consumers, the DeLost court concluded that cutting down vegetation is a practice relating to service as contemplated by R.C. 4905.26 and that it fell within PUCO’s exclusive jurisdiction. Id. at ¶ 40. Therefore we must determine whether the court of appeals in this case or in DeLost is correct.
{¶ 15} We agree with the DeLost court that this type of case falls within the exclusive jurisdiction of PUCO. The first part of the Allstate test asks whether PUCO’s administrative expertise is required to resolve the issue in dispute. Ohio Adm.Code 4901:1-10-27(D)(2) requires that each electric utility inspect its electric-transmission facilities (circuits and equipment) at least once every year. The inspections are to be conducted in accordance with written programs. Ohio Adm.Code 4901:1-10-27(E)(1). “These programs shall establish preventative requirements for the electric utility to maintain safe and reliable service. Programs shall include, but are not limited to, the following facilities: * * * (f) Right-of-way vegetation control * * *.” Id. The vegetation-management plan takes a number of factors into consideration such as arcing, sagging, and line voltage as well as regulatory requirements from OSHA, FAA, and the Army Corps of Engineers. In addition, electric utilities are required to comply with the American National Standard Institute’s “National Electrical Safety Code.” Ohio Adm.Code 4901:1-10-06. Finally, electric utilities are required to submit their programs to the director of the consumer-services department for review and acceptance. Ohio Adm.Code 4901:1-10-27(E)(2). If the electric utility and the director cannot agree on the details and contents of the plan, the electric utility is required to file a complaint with PUCO. Id. The company’s decision to remove *269 a tree is governed by its vegetation-management plan, which is regulated by PUCO. Therefore, we conclude that PUCO’s administrative expertise is required to resolve the issue of whether removal of a tree is reasonable.
{¶ 16} The second part of the Allstate test is whether the act complained of constitutes a practice normally authorized by the utility. Vegetation management is necessary to maintain safe and reliable electrical service. See Ohio Adm.Code 4901:1-10-27(E)(2). Thus, the second part of the test is satisfied. Having answered both Allstate questions in the affirmative, we determine that this case falls within the exclusive jurisdiction of PUCO.
{¶ 17} Despite the Corrigans’ argument that we are presented with a pure contract matter, this case is not about an easement. There is no question that the company has a valid easement and that the tree is within the easement. Furthermore, the language of the easement is unambiguous and provides the company with the following rights:
{¶ 18} “Said right and easement shall include the right of the Grantee, its successors and assigns, at all times to enter upon the right of way occupied by said transmission lines for the purpose of constructing, inspecting, protecting, repairing or removing said towers, wires, fixtures and appliances, together with full authority to cut and remove any trees, shrubs or other obstructions upon the above described property which may interfere or threaten to interfere with the construction, operation and maintenance of said transmission lines.” (Emphasis added.)
{¶ 19} This language grants the company the right to remove any tree within the easement that could pose a threat to the transmission lines. See also Beaumont v. FirstEnergy Corp., 11th Dist. No. 2004-G-2573, 2004-Ohio-5295, 2004 WL 2804801, ¶ 22.
{¶ 20} It is clear from the record that the Corrigans are not contesting the meaning of the language of the easement but rather the company’s decision to remove the tree instead of pruning it. In 2000, the company changed its vegetation-management plan so that its policy was to remove vegetation that threatened to interfere with its lines. Although the Corrigans disagree with this policy, the broad language of the easement granted to the company allows the utility to remove trees within its easement that may interfere or threaten to interfere with its power lines. Therefore, the Corrigans’ complaint with the decision to remove the tree is really an attack on the company’s vegetation-management plan. That type of complaint is a service-related issue, which is within PUCO’s exclusive jurisdiction.
Ill
{¶ 21} We agree with the DeLost court. The relevant sections of the Ohio Administrative Code show that vegetation management is manifestly service- *270 related. DeLost, 2008-Ohio-3086, 2008 WL 2486506, ¶ 39-40. R.C. 4905.26 specifically confers exclusive jurisdiction upon PUCO to determine whether any service provided by a public utility is in any respect unjust, unreasonable, or in violation of the law. Columbia Gas, 102 Ohio St.3d 349, 2004-Ohio-3208, 810 N.E.2d 953, at ¶ 16. Therefore, whether the company’s decision that the silver maple interferes or threatens to interfere with its transmission line is reasonable is a service-related question within PUCO’s exclusive jurisdiction.
{¶ 22} The judgment of the Cuyahoga County Court of Appeals is reversed.
Judgment reversed.
Moyer, C.J., and Lundberg Stratton and O’Connor, JJ., concur.
Pfeifer, O’Donnell, and Cupp, JJ., dissent.