[Cite as *Ungar v. Longworth*, 2011-Ohio-2885.]

STATE OF OHIO            )
                         )ss:
COUNTY OF SUMMIT         )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

KEITH S. UNGAR, D. C.

    Appellee

    v.

BRIAN LONGWORTH, et al.

    Appellants

    v.

CHOICE ONE COMMUNICATIONS

    Third Party Defendant

C.A. No.     25325

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2008-02-1528

DECISION AND JOURNAL ENTRY

Dated: June 15, 2011

BELFANCE, Presiding Judge.

{¶1} Appellants Brian Longworth, D.C., William Gandee, D.C., Health First Chiropractic Clinic, Inc., and Gandee Chiropractic Life Center (collectively "Appellants") appeal the decision of the Summit County Court of Common Pleas dismissing their third-party complaint against Appellee Choice One Communications, Inc., d.b.a. One Communications, a provider of telephone services, for lack of subject matter jurisdiction. For the reasons set forth below, we affirm in part and reverse in part.

BACKGROUND

{¶2} In 2006, Dr. Ungar, Dr. Longworth, and Dr. Gandee, all licensed chiropractors, entered into a joint business venture whereby the three would operate a practice out of Dr.

Ungar's business location. For various reasons not relevant to this appeal, Dr. Longworth and Dr. Gandee ended that business relationship shortly after it commenced.

{¶3} For many years prior to the 2006 business relationship with Dr. Ungar, Dr. Longworth and his business entity, Health First Chiropractic Clinic, and Dr. Gandee and his business entity, Gandee Chiropractic Life Center, each maintained separate business telephone lines with AT & T. Both Dr. Longworth and Dr. Gandee had AT & T forward their respective business telephone numbers to Dr. Ungar's location at the commencement of their business relationship with him.

{¶4} In September 2006, unbeknownst to the other doctors, Dr. Ungar contacted his telephone service provider, Choice One Communications, and requested that Dr. Gandee's and Dr. Longworth's business phone numbers be ported to Choice One Communications. Choice One Communications sent Dr. Ungar a letter of agency to verify that he had authority to transfer the phone numbers. Dr. Ungar filled out the form and sent it back.

{¶5} When Dr. Longworth and Dr. Gandee learned that their numbers had been ported over to Choice One Communications, they attempted to have the numbers transferred back. However, Choice One Communications refused to do so as Dr. Longworth and Dr. Gandee were not listed on the account with Choice One Communications.

{¶6} In February 2008, Dr. Ungar filed a multi-count complaint against Appellants based upon the failed joint venture. Appellants filed an answer, counterclaims, and third-party claims, which included claims against Dr. Ungar's practice and Choice One Communications. Appellants asserted claims for constructive trust and wrongful detention against Choice One Communications. Appellants subsequently amended their answer and third-party complaint; the amendment included a revision to the constructive trust claim which was then characterized as a

claim for constructive trust and damages. Appellants' claims against Choice One Communications primarily focused on Choice One Communications' alleged unlawful transfer of Dr. Longworth's and Dr. Gandee's phone numbers from AT & T and its alleged unlawful failure to transfer those numbers back to AT & T upon request from Dr. Longworth and Dr. Gandee.

{¶7}    A magistrate held a hearing in May 2009 solely to resolve the dispute concerning whether the transfer of Dr. Longworth's phone number by Dr. Ungar was authorized by Dr. Longworth. Prior to the hearing Dr. Ungar gave up his claim of ownership over Dr. Gandee's phone number. The magistrate concluded that Dr. Ungar was never authorized to transfer Dr. Longworth's phone number, and ordered Choice One Communications to transfer the ownership of Dr. Longworth's phone number back to Dr. Longworth. No objections were filed and the trial court adopted the magistrate's decision.[1] Dr. Longworth's phone number was not transferred back to him until July 2009; Dr. Gandee's phone number was not transferred back to him until September 2009.

{¶8}    Thereafter, Choice One Communications moved for summary judgment on the third-party claims against it. In Choice One Communciations' reply brief, it asserted that the trial court lacked subject matter jurisdiction over the third-party claims against it. Choice One Communications maintained that the Public Utilities Commission of Ohio ("PUCO") has exclusive jurisdiction over the case. The trial court agreed with Choice One Communications and dismissed the matter based upon lack of subject matter jurisdiction. Prior to trial, the remainder of the claims were settled and the case was dismissed with prejudice.

---

[1] Subsequently, this matter was consolidated with a pending matter involving a creditor's bill action by FirstMerit Bank, N.A. The portion of the case involving FirstMerit Bank, N.A. is not a subject of this appeal.

{¶9} Appellants have appealed, raising a single assignment of error for our review.

SUBJECT MATTER JURISDICTION

{¶10} In Appellants' sole assignment of error, they argue that the trial court erred in its determination that it lacked subject matter jurisdiction to determine the merits of Appellants' third-party claims against Choice One Communications. We agree in part. We believe that whether Choice One Communications had the proper authorization to request the transfer of Dr. Longworth's and Dr. Gandee's phone numbers from AT & T to Choice One Communications based upon the letter of agency signed by Dr. Ungar, and whether Choice One Communications was required to transfer those numbers back to AT & T at the request of Dr. Longworth and Dr. Gandee at the time they discovered the wrongful transfer are questions that must be answered by PUCO. However, we conclude that the portion of Appellants' wrongful detention claim concerning Choice One Communications' failure to return the numbers after it became aware during the litigation that Dr. Ungar's request to transfer the numbers was wrongful and not authorized by Dr. Longworth and that Dr. Ungar had disavowed his interest in Dr. Gandee's number is a pure tort claim, properly within the jurisdiction of the trial court.

{¶11} "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction on the subject matter, the court shall dismiss the action." Civ.R. 12(H)(3). This Court reviews determinations of subject matter jurisdiction de novo. *Communicare Health Servs., Inc. v. Murvine*, 9th Dist. No. 23557, 2007-Ohio-4651, at ¶13.

{¶12} The Supreme Court has stated that:

"The General Assembly enacted R.C. 4901.01 et seq. to regulate the business activities of public utilities and created PUCO to administer and enforce these provisions. R.C. 4905.26 provides that PUCO shall hear complaints filed against public utilities alleging that any rate, fare, charge, toll, rental, schedule,

classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential. This jurisdiction specifically conferred by statute upon the Public Utilities Commission over public utilities of the state is so complete, comprehensive and adequate as to warrant the conclusion that it is likewise exclusive." (Internal citations and quotations omitted.) *Corrigan v. Illuminating Co.*, 122 Ohio St.3d 265, 2009-Ohio-2524, at ¶8.

However, "[t]he broad jurisdiction of PUCO over service-related matters does not affect the basic jurisdiction of the court of common pleas in other areas of possible claims against utilities, including pure tort and contract claims." (Internal quotations and citation omitted.) Id. at ¶9. To decide whether that matter falls within the exclusive jurisdiction of PUCO, courts are not limited by the allegations in the complaint, and instead, must examine "the substance of the claims to determine if service-related issues are involved." Id. at ¶10. "[C]asting the allegations in the complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court when the basic claim is one that the commission has exclusive jurisdiction to resolve." (Internal quotations and citation omitted.) Id.

{¶13} The Supreme Court has adopted a two-part test to determine whether claims fall within the sole jurisdiction of PUCO: "First, is PUCO's administrative expertise required to resolve the issue in dispute? Second, does the act complained of constitute a practice normally authorized by the utility?" (Internal quotations and citation omitted). Id. at ¶11. "If the answer to either question is in the negative, the claim is not within PUCO's exclusive jurisdiction." (Internal quotations and citation omitted.) Id. at ¶12.

{¶14} Here, while Appellants' claims are styled in their amended complaint as pure tort claims, it is clear that a portion of the claims concern whether Choice One Communications had

the proper authorization to request the transfer of Dr. Longworth's and Dr. Gandee's phone numbers from AT & T to Choice One Communications based upon the letter of agency signed by Dr. Ungar, and whether Choice One Communications was required to transfer those numbers back to AT & T at the request of Dr. Longworth and Dr. Gandee at the time they discovered the transfer. A change-in-service- provider request by a public utility to a telecommunication provider, whether proper or improper, is discussed at considerable length in both the Ohio Revised Code and the Administrative Code, in the sections dealing with PUCO.

{¶15} For example, R.C. 4905.72(B) provides that:

"(1) No public utility shall request or submit, or cause to be requested or submitted, a change in the provider of natural gas service or public telecommunications service to a consumer in this state, without first obtaining, or causing to be obtained, the verified consent of the consumer in accordance with rules adopted by the public utilities commission pursuant to division (D) of this section.

"(2) No public utility shall violate or fail to comply with any provision of a rule adopted by the commission pursuant to division (D) of this section or any provision of an order issued by the commission pursuant to division (B) or (C) of section 4905.73 of the Revised Code." See, also Ohio Adm.Code 4901:1-5-09.

Public telecommunications service includes transmissions by telephone companies. R.C. 4905.72(A)(2). R.C. 4905.72(D) provides that:

"The commission shall adopt competitively neutral rules prescribing procedures necessary for verifying the consent of a consumer for purposes of division (B)(1) of this section and any procedures necessary for the filing of a security under division (C)(5) of section 4905.73 of the Revised Code, and may adopt such other competitively neutral rules as the commission considers necessary to carry out this section and section 4905.73 of the Revised Code. With respect to public telecommunications service only, the rules prescribing procedures necessary for verifying consumer consent shall be consistent with the rules of the federal communications commission in 47 C.F.R. 64.1100 and 64.1150."

This statute appears to encompass the heart of Appellants' allegations; namely, that Choice One Communications submitted a request for a change of service provider to AT & T without proper authorization. Further, R.C. 4905.73(A) specifically imparts jurisdiction on PUCO for alleged

violations of R.C. 4905.72(B). ("The public utilities commission, upon complaint by any person or complaint or initiative of the commission, has jurisdiction under section 4905.26 of the Revised Code regarding any violation of division (B) of section 4905.72 of the Revised Code by a public utility.").

{¶16} Given the above, it seems clear that PUCO's expertise is required to resolve the issue in dispute. See *Corrigan* at ¶11. In order to determine whether Choice One Communications followed the proper procedures in requesting the transfer of Dr. Longworth's and Dr. Gandee's phone numbers from AT & T, and in failing to transfer the numbers back to AT & T upon the initial requests of Drs. Longworth and Gandee, rules adopted by PUCO would need to be examined. See R.C. 4905.72(B)(1), see, also, *Ayers-Sterrett, Inc. v. Am. Telecommunications Systems, Inc.*, 162 Ohio App.3d 285, 2005-Ohio-3606, at ¶15 (applying the test later adopted by the Supreme Court) ("It is clear from the above that the unauthorized switching of a subscriber's telecommunications service has been contemplated and addressed thoroughly in the statutes and regulations pertaining to PUCO. Thus, PUCO's expertise would be required to fully resolve the matter, and the first prong of the test to determine whether the matter is manifestly service-related is satisfied.") Further, it is likewise clear that submitting requests for changes to telephone service providers is an action normally authorized by the agency. See *Corrigan* at ¶11; see, also *Ayers-Sterrett* at ¶16 (concluding the second prong of the test was satisfied as it was evident that "a detailed procedure for handling such transfers and disputes has been created in the administrative code[]"). Therefore we conclude that the trial court properly determined that PUCO has exclusive jurisdiction of Appellants' claims against Choice One Communications concerning whether Choice One Communications followed the appropriate procedures in transferring the numbers to Dr. Ungar.

**{¶17}** However, the other portion of Appellants' claims involves pure tort issues; Appellants alleged in their brief in opposition to Choice One Communications' motion for summary judgment that Choice One Communications wrongfully detained their phone numbers *after* it had knowledge that the transfer requested by Dr. Ungar was not authorized. Irrespective of whether Choice One Communications was bound by the magistrate and trial court's decisions, the record reflects that Choice One Communications participated in the litigation and through the decisions of the court gained the knowledge that the trial court determined that Dr. Ungar had no authority to sign the letter of agency that resulted in the transfer of Dr. Longworth's number. The magistrate's factual determinations were not challenged and were adopted by the trial court. In addition, Dr. Ungar abandoned any ownership claim as to Gandee's phone number at some point prior to the issuance of the magistrate's decision. This aspect of Appellants' claim of wrongful detention involves consideration of whether after becoming aware of the facts in the course of the litigation, Choice One Communications nonetheless wrongfully detained the numbers when it failed to promptly return them. There is nothing in the record to suggest that resolution of this disputed issue would require PUCO's expertise. See *Corrigan* at ¶11.

**{¶18}** We believe that in some ways, this claim is similar to the claim in *Allstate Ins. Co. v. Cleveland Elec. Illuminating Co.,* 119 Ohio St.3d 301, 2008-Ohio-3917, in which the Supreme Court of Ohio determined that PUCO did not have exclusive jurisdiction over the claim. Id. at ¶16. In *Allstate*, "Allstate alleged that CEI[, the utility] was negligent in failing to respond to a customer's service call and that Allstate was obligated to pay claims to two of its insureds when a fire and property damage occurred." Id at ¶1. The Supreme Court stated that:

> "[t]he ultimate question in this case is whether the delay between CEI's receipt of the emergency calls and arrival at the Harris residence was reasonable. That issue is particularly appropriate for resolution by a jury. The expertise of PUCO is not necessary to the resolution of this case." Id. at ¶14.

Similarly, the question at issue here is whether Choice One Communications' delay in returning the phone numbers to Appellants was reasonable after it knew that Dr. Ungar's transfer of one of the numbers was unauthorized and/or that Dr. Ungar had disavowed ownership of the other. We conclude such a question is properly determined by a jury as it does not require the expertise of PUCO.

{¶19} Further, as the trial court never considered the merits of Choice One Communications' motion for summary judgment, this Court declines to do so in the first instance.

CONCLUSION

{¶20} In light of the foregoing, the judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to all parties equally.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, J.
CONCURS

CARR, J.
CONCURS IN PART, AND DISSENTS IN PART, SAYING:

{¶21} I respectfully dissent as I would agree with the trial court that Choice One Communications' claims lie within the exclusive jurisdiction of the PUCO. Moreover, I would conclude that any tort claim arising during litigation is not ripe and cannot form the basis of a determination of jurisdiction in regard to the third party complaint. Accordingly, I would affirm the trial court's dismissal of the third party claims against Choice One Communications on the basis of a lack of subject matter jurisdiction.

APPEARANCES:

THOMAS A. SKIDMORE, Attorney at Law, for Appellants.

MICHAEL D. DORTCH, Attorney at Law, for Appellee.