[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Corrigan v. Illum. Co.,* Slip Opinion No. 2017-Ohio-7555.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7555

CORRIGAN ET AL., APPELLANTS, *v.* ILLUMINATING COMPANY ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Corrigan v. Illum. Co.,* Slip Opinion No. 2017-Ohio-7555.]

*Public utilities—Vegetation-management plan—Evidence supported Public Utilities Commission's order authorizing removal of tree from easement— Order affirmed.*

(No. 2014-0799—Submitted June 7, 2017—Decided September 13, 2017.)

APPEAL from the Public Utilities Commission,

No. 09-492-EL-CSS.

_____

**FRENCH, J.**

{¶ 1} The Public Utilities Commission of Ohio, appellee, determined that the plan of intervening appellee, the Illuminating Company ("the company"), to remove  a silver maple tree located near its transmission line was reasonable.  The tree belonged to appellants, Mary-Martha and Dennis Corrigan.  Before it was removed, the tree stood within the company's easement running through the Corrigans' property.   The  Corrigans  have  appealed  the  commission's

determination, asserting that it was unlawful and unreasonable. We find no error and therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

{¶ 2} For over ten years, the parties have litigated the fate of this tree. In 2004, the company notified the Corrigans that the tree was subject to removal because it was within the company's easement and potentially interfered with the transmission line. *Corrigan v. Illum. Co.*, 122 Ohio St.3d 265, 2009-Ohio-2524, 910 N.E.2d 1009, ¶ 2. The Corrigans obtained permanent injunctive relief in common pleas court, which enjoined the company from removing the tree. *Id.* at ¶ 5. The company then appealed and asserted, among other things, that the common pleas court lacked subject-matter jurisdiction. *Id.* at ¶ 6. The court of appeals rejected that argument and affirmed. *Id.*

{¶ 3} We accepted the company's discretionary appeal and reversed, holding that the jurisdiction of the Public Utilities Commission over the Corrigans' complaint was exclusive. *Id*. at ¶ 15. We observed that the Corrigans' claim was properly understood not as a challenge to the scope of the company's rights under the easement but rather as a challenge to the company's vegetation-management plan, which the commission alone oversees. *Id.* at ¶ 20. Because the latter challenge implicated a service-related issue, we concluded that the dispute fell within the commission's exclusive jurisdiction. *Id.*

{¶ 4} Less than a week after our decision, the Corrigans filed a complaint with the commission against the company to prevent the tree's removal. After a hearing, the commission ruled that the company's planned removal of the tree was reasonable. The commission found that the tree was extensively decayed and that "parts of it are almost certain to fail in the not-too-distant future." It concluded that pruning was impracticable because the tree would have responded with new growth in the pruned areas. Further, too much pruning would have depleted the tree's energy reserves, causing it to die. The commission credited the company's

testimony on the potential safety hazards posed by the tree's continued existence near the transmission line, which included outages, fire, and electrocution. And the commission explained that ceding vegetation-management responsibilities to customers was imprudent because it would endanger customers and unduly burden the company in trying to enforce its policies.

{¶ 5} The next day, the commission granted the Corrigans' request for a stay and directed the company to refrain from removing or otherwise harming the tree pending the issuance of a final, appealable order. At the Corrigans' request, two days after the commission issued the final order on May 14, 2014, it directed the company to refrain from removing or otherwise harming the tree "for 14 days or, in the event the next Commission meeting is postponed, until the next Commission meeting." That same day, the Corrigans filed for a stay in this court. We denied the stay request because the Corrigans did not comply with the notice and bond requirements prescribed by R.C. 4903.16. 139 Ohio St.3d 1428, 2014-Ohio-2725, 11 N.E.3d 283. On June 27, 2014, without a stay in place—either from the commission or this court—the company removed the tree.

**STANDARD OF REVIEW**

{¶ 6} "R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. And we will not reverse or modify a commission decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the

burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id.*

## DISCUSSION

**{¶ 7}** The Corrigans' challenges are largely fact-based and proceed along two main themes: (1) the evidence does not support a finding that pruning was impracticable and (2) the evidence does not support a finding that the tree posed a threat to the line. The Corrigans intersperse these arguments with generalized disagreements with the commission's approach to vegetation management. Just as in *Wimmer v. Pub. Util. Comm.*, 131 Ohio St.3d 283, 2012-Ohio-757, 964 N.E.2d 411, in which we concluded that the evidence supported a commission order authorizing tree removal, we reject the Corrigans' evidentiary challenges and otherwise find no merit to their position.

### The Corrigans' First Proposition of Law

**{¶ 8}** The Corrigans first assert that the evidence does not support the commission's finding that continued pruning was not a viable option. We are unpersuaded. Robert J. Laverne, manager of education and training for Davey Tree Expert Company and a certified arborist, testified that past pruning operations were ineffective over the long term and that future pruning would diminish the tree's vigor. Laverne pointed to areas of decay from past pruning cuts, which sapped the tree's ability to produce the energy required for sustenance. And he observed that past pruning had actually shortened the tree's expected life span.

**{¶ 9}** Scant evidence points in the other direction. Mrs. Corrigan explained that she thought that the tree was healthy because it had foliage and because others had told her it was healthy. But she is not an arborist and has no education, training, or experience in maintaining, pruning, or trimming trees. Moreover, Laverne explained that foliage does not necessarily indicate a healthy tree and that he has witnessed trees with full crowns of foliage that have fallen down due to excessive decay. The evidentiary ledger decidedly favors the commission's finding on the

ineffectiveness of pruning; the Corrigans seek a reweighing of the evidence, but that is not our function here. *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 35.

{¶ 10} The Corrigans next insist that continued pruning was a viable option because past pruning enabled the tree and the line to coexist. But this reasoning is flawed because it overlooks the fact that the health of the tree had deteriorated and that pruning would not have reversed the tree's worsening condition. Laverne explained that decay pockets were scattered throughout the tree, that the tree was in a state of decline, and that there was a high degree of certainty that the decay rate was increasing. He stated that nothing could be done to arrest or limit the spread of decay. Nor could the tree have cured or pushed the decay out on its own; once wood is decayed, it remains that way. While some tree species are able to compartmentalize areas of decay by generating chemical barriers, silver maples compartmentalize poorly.

{¶ 11} The Corrigans also object to what they view as the company's increasingly aggressive approach to removing trees. But they have not established reversible error. Ohio Adm.Code 4901:1-10-27(E)(1) requires electric utilities to maintain a right-of-way vegetation-control program. The particular program followed by the company describes "vegetation control" as "the removal of vegetation that has the potential to interfere with the safe and efficient operation of the transmission system." In its order, the commission noted its past approval of the company's program and explained, "We can find nothing about [the company's] planned removal of the Tree that conflicts with its right-of-way vegetation control measures on file * * *." Dispositive here is the Corrigans' failure to allege—let alone show—that the company's program conflicts with the rule.[1]

---

[1] The Corrigans argue for the first time in their reply brief that the commission should have rejected the company's definition of "incompatible vegetation" pursuant to R.C. 4905.37. We ignore this newly raised argument. *In re Application of Am. Transm. Sys., Inc.*, 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶ 35 (a new argument raised on reply is waived).

**The Corrigans' Second Proposition of Law**

{¶ 12} The Corrigans assert in their second proposition of law that the commission's order contravenes what they believe to be the commission's vegetation-management policy. We are unconvinced. The Corrigans derive this alleged policy from *In re Complaint of Jeffers v. Toledo Edison Co.*, Pub. Util. Comm. No. 10-430-EL-CSS, 2013 WL 792598 (Jan. 23, 2013). There, the commission stated that a utility has a responsibility to "attempt to minimize the impact to the property owners, to the extent possible and without sacrificing safety and reliability, when performing vegetation management activities." *Id.* at *5. "[R]emoval of trees is sometimes necessary in accordance with a utility's vegetation management plan, though removal must be done only when trimming and pruning are not a viable option." *Id.* at *7.

{¶ 13} Even if these statements are official commission policy, the order faithfully follows them. As discussed, the commission concluded that pruning was no longer a viable option. This finding, coupled with the commission's concerns for the reliability and safety hazards that the tree posed to the line and to the public, justifies the commission's conclusion that removal of the tree was reasonable.

{¶ 14} The Corrigans counter that they pruned the tree within the standards of acceptable arboreal care so that the tree could be preserved without sacrificing the safety and reliability of the transmission line. But the record belies this assertion. Mrs. Corrigan was the only person to testify in support of the complaint, and her lay testimony does not establish that the tree was pruned according to arboreal standards or that the pruning preserved the safety and reliability of the line. The commission found that the Corrigans failed to rebut the company's evidence showing the safety hazards posed by the tree's continued existence near the line. We do not second-guess the commission's factual determinations. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 114 Ohio St.3d 340, 2007-Ohio-4276, 872 N.E.2d 269, ¶ 29.

6

**{¶ 15}** The Corrigans next contend that the commission's "policy of vegetation preservation" required the company to cite evidence that the Corrigans could not properly attend to their tree. They claim that the company presented no such evidence; thus, the tree should have been allowed to stand. But the Corrigans were the complainants, and as the commission expressly stated in its order, they bore the burden of proving their claim. *Grossman v. Pub. Util. Comm.*, 5 Ohio St.2d 189, 190, 214 N.E.2d 666 (1966). The commission found that the Corrigans failed to prove that the company acted unreasonably in implementing its right-of-way vegetation-control program, and we find no error in that determination.

### The Corrigans' Third Proposition of Law

**{¶ 16}** In their last challenge, the Corrigans contend that the evidence does not support the commission's conclusion that the tree could potentially interfere with the line. We disagree. The tree at issue was a silver maple located in the backyard of the Corrigans' property. Before it was removed, it stood about 55 feet tall, placing it roughly 25 feet higher than the lower conductor of the company's transmission line. The company's witnesses admitted that the tree was not directly underneath the line and that it was outside of the horizontal clearance prescribed by the National Electrical Safety Code, which is adopted in Ohio Adm.Code 4901:1-10-06.

**{¶ 17}** Rebecca Spach, FirstEnergy Service Company's manager of transmission vegetation management and a certified arborist, explained that if the tree fell toward the line it would strike the middle and lower wires. And as already described, the evidence showed that the tree was decayed in many areas. At a minimum, parts of the tree were, in the words of the commission, "destined to fail and fall into the transmission lines." This supports the commission's finding that the company "reasonably determined that the Tree could potentially interfere with its transmission lines." The tree stood within the easement granted to the company, and the easement's terms require no more to justify removal. *Corrigan*, 122 Ohio

St.3d 265, 2009-Ohio-2524, 910 N.E.2d 1009, at ¶ 17, 19 ("the easement is unambiguous" and "grants the company the right to remove any tree within the easement that could pose a threat to the transmission lines").

{¶ 18} Next, the Corrigans cite a "supplemental support system" installed on the tree, and they allege that the system could have preserved the tree's useful life by 10 to 30 years. But Laverne explained that the system was installed directly below one of the large pruning wounds and that in the not-too-distant future, the wood at the pruning site would decay, resulting in a loosened lag bolt that would almost certainly render the system ineffective within ten years. The commission credited Laverne's opinion of the system, and we do not substitute our judgment for the commission's evidentiary findings. *Monongahela Power*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, at ¶ 29.

{¶ 19} Lastly, the Corrigans accuse the commission of "fearmongering" when it cited the safety hazards that could arise from vegetation contact with a line. In their view, highway travel presents a greater risk of harm than that posed by the tree. Because highway travel is not banned despite its much greater risks, they assert, the lesser, more speculative hazard posed by the tree cannot support its removal.

{¶ 20} The Corrigans' comparison of disparate risks does not persuade us. The company's witness David Kozy, FirstEnergy Service Company's general manager of transmission engineering, explained that if the tree contacted the line, the resulting outages—and potential fires—could endanger property and people. Likewise, the company's witness Stephen Cieslewicz, a certified arborist and certified utility specialist, stated that the Northeast blackout in 2003 taught the industry that there should be less pruning and more tree removal. The commission found that the Corrigans did not rebut the company's safety-related evidence, and we will not disturb that factual finding. *Id.*

**{¶ 21}** Ultimately, the Corrigans' comparison of the hazards posed by highway travel to those posed by the tree boils down to a generalized disagreement with the commission's policy of regarding safety and reliability as paramount. Abstract policy disputes do not, on their own, establish reversible error. *In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 17.

## CONCLUSION

**{¶ 22}** Because the Corrigans failed to show that the commission's decision was unlawful or unreasonable, we affirm.

Order affirmed.

O'CONNOR, C.J., and KENNEDY and O'NEILL, JJ., concur.

O'DONNELL, J., concurs in judgment only.

DEWINE, J., dissents, with an opinion joined by FISCHER, J.

_____

**DEWINE, J., dissenting.**

**{¶ 23}** The only thing at issue in this case is the fate of a tree that was chopped down over three years ago. Once the tree was felled, there was no relief this court could provide to the Corrigans. I would dismiss their appeal as moot.

**{¶ 24}** Our court decides "actual controversies." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). This means that a party bringing a case must have standing, that is, "a personal stake in the outcome of the controversy." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Standing requires an injury that is "likely to be redressed by the requested relief." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). And standing must continue throughout the proceedings. As described by one commentator, "[m]ootness is * * * the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement

of the litigation (standing) must continue throughout its existence (mootness)." Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973).

{¶ 25} Decided correctly, this case could easily qualify as a textbook example of mootness. To be sure, the Corrigans had standing when they filed the complaint. They presented an actual controversy about the fate of their tree. But the chainsaw that brought down the silver maple took the Corrigans' standing with it. The relief they sought—to keep their tree—was no longer available. Even if the Corrigans' legal arguments were to carry the day, we cannot bring back the tree. The appeal should be dismissed as moot.

FISCHER, J., concurs in the foregoing opinion.

_____

Lester S. Potash, for appellants.

Michael DeWine, Attorney General, and William L. Wright, Thomas G. Lindgren, and Katie L. Johnson, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

Jones Day and David A. Kutik; and James W. Burk and Carrie M. Dunn, for intervening appellee Illuminating Company.

_____