[Cite as *Pacific Indemn. Co. v. Deems*, 2020-Ohio-250.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Pacific Indemnity Company, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-349 |
| v. | : | (C.P.C. No. 18CV-3583) |
| Dorothy R. Deems et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 28, 2020

**On brief**: *Andrew R. Kasle*, for appellant. **Argued**: *Andrew R. Kasle*.

**On brief**: *Reminger Co., LPA, Patrick Kasson*, and *Kenton H. Steele*, for appellees Asplundh Tree Expert LLC and Ohio Power Company; *Dickie, McCamey & Chilcote, P.C.*, and *R. Leland Evans*, for appellee Ohio Power Company. **Argued**: *Patrick Kasson*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Pacific Indemnity Company, from a judgment of the Franklin County Court of Common Pleas granting the motion to dismiss filed by defendants-appellees, Ohio Power Company ("OPC") and Asplundh Tree Expert, LLC ("Asplundh").

{¶ 2} On May 9, 2018, appellant filed a complaint, naming as defendants Dorothy R. Deems ("Deems"), American Electric Power ("AEP"), and Asplundh. The complaint alleged the following facts. Pursuant to a policy of insurance, appellant is the

insurer for property owned by Bradley and Lauren Cicalas (collectively "the Cicalas"). On April 30, 2017, a tree on the property owned by Deems, located on South Columbia Avenue, Bexley, blew over during a storm, falling onto the real property of the Cicalas, located on South Parkview Avenue, Bexley (the "premises"). The tree damaged fencing and landscaping on the premises, as well as some electrical power lines owned and operated by AEP.

{¶ 3} According to the complaint, the Cicalas previously warned Deems and AEP about the tree because it was "precariously leaning over" the premises and the power lines. (Compl. at ¶ 4.) Despite such warning, no action was taken before the tree blew over. Following the storm, work crews for AEP and/or Asplundh came to the premises to remove the tree. It was alleged that, in removing the fallen tree, AEP and/or Asplundh negligently caused additional damage to the premises' landscaping and sprinkler system. Further, as a result of appellees' negligence, appellant was required to pay its insureds the sum of $71,880.78, thereby subrogating itself to the rights and claims of the Cicalas.

{¶ 4} Asplundh and Deems filed answers to the complaint. On June 12, 2018, the parties filed a stipulation and notice of substitution of OPC as the defendant and real party in interest in place of AEP. On June 25, 2018, OPC filed its answer. On February 26, 2019, OPC and Asplundh filed a joint motion to dismiss or, in the alternative, for summary judgment, asserting the trial court lacked jurisdiction over the claims as falling within the exclusive jurisdiction of the Public Utilities Commission of Ohio ("PUCO"). On March 15, 2019, appellant field a brief in opposition to the motion to dismiss. On April 5, 2019, OPC and Asplundh filed a reply.

{¶ 5} On May 1, 2019, the trial court filed a decision and entry granting the motion to dismiss filed by OPC and Asplundh. The trial court dismissed the action for lack of subject-matter jurisdiction, pursuant to Civ.R. 12(B)(1), finding the claims as asserted by appellant "fall within the exclusive jurisdiction of PUCO." (Decision at 6.)

{¶ 6} On appeal, appellant sets forth the following assignment of error for this court's review:

> The Trial Court erred in dismissing Appellant's common law tort claim since the PUCO does not have exclusive jurisdiction over these claims, the claims do not involve a "service-oriented" claim, a filed tariff nor a "practice" of the public

utility and the PUCO does not have the expertise required or authorized by Ohio law over these claims.

{¶ 7} Under its single assignment of error, appellant asserts the trial court erred in dismissing its complaint, pursuant to Civ.R. 12(B)(1), based on the court's determination that PUCO had exclusive jurisdiction over the claims. Appellant maintains the complaint alleges a common-law claim of negligence, and that the expertise of PUCO in interpreting regulations is not necessary to the resolution of the case. Appellant further argues Asplundh is not a public utility subject to PUCO rules or jurisdiction.

{¶ 8} In general, "[s]ubject-matter jurisdiction involves ' "a court's power to hear and decide a case on the merits and does not relate to the rights of the parties." ' " *Moore v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-599, 2019-Ohio-767, ¶ 4, quoting *Robinson v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 10AP-550, 2011-Ohio-713, ¶ 5, quoting *Vedder v. Warrensville Hts.*, 8th Dist. No. 81005, 2002-Ohio-5567, ¶ 14. In considering a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction, a trial court "determines whether the claim raises any action cognizable in that court." *Id.,* citing *Brown v. Ohio Tax Commr.,* 10th Dist. No. 11AP-349, 2012-Ohio-5768; *Robinson* at ¶ 5. Further, "in making a determination regarding subject-matter jurisdiction, '[t]he trial court is not confined to the allegations of the complaint,' and 'it may consider material pertinent to such inquiry without converting the motion into one for summary judgment.' " *Id.,* quoting *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.,* 48 Ohio St.2d 211 (1976), paragraph one of the syllabus. This court applies "a de novo standard when we review a trial court's ruling on a Civ.R. 12(B)(1) motion to dismiss" for lack of subject-matter jurisdiction. *Id.*

{¶ 9} In general, "PUCO has exclusive jurisdiction over most matters concerning public utilities." *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.,* 119 Ohio St.3d 301, 2008-Ohio-3917, ¶ 5. The exclusive jurisdiction of PUCO "includes matters * * * such as rates and charges, classifications, and service." *Valentin v. Ohio Edison,* 7th Dist. No. 11 MA 93, 2012-Ohio-2437, ¶ 9, citing *Higgins v. Columbia Gas of Ohio, Inc.*, 136 Ohio App.3d 198, 201 (7th Dist.2000).

{¶ 10} R.C. 4905.26 states in part:

Upon complaint in writing against any public utility by any person * * * that any rate, fare, charge, toll, rental, schedule,

classification, or service, * * * or service rendered * * * is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, * * * if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof. The notice shall be served not less than fifteen days before hearing and shall state the matters complained of. The commission may adjourn such hearing from time to time.

{¶ 11} Thus, "R.C. 4905.26 confers exclusive jurisdiction on PUCO to determine whether any 'service rendered' by a public utility or any 'practice affecting or relating to any service furnished by a public utility, or in connection with such service' is in any respect unjust, unreasonable, or in violation of law." *Pro Se Commercial Properties v. Illum. Co.*, 8th Dist. No. 92961, 2010-Ohio-516, ¶ 9. *See also Jones v. Ohio Edison Co.,* 11th Dist. No. 2014-A-0015, 2014-Ohio-5466, ¶ 9 (noting the Supreme Court of Ohio has interpreted R.C. 4905.26 "to confer jurisdiction upon PUCO to hear all complaints pertaining to service provided by a public utility, i.e., 'service complaints' ").

{¶ 12} In *Corrigan v. Illum. Co.,* 122 Ohio St.3d 265, 2009-Ohio-2524, ¶ 9, quoting *State ex rel. Ohio Edison Co. v. Shaker,* 68 Ohio St.3d 209, 211 (1994), the Supreme Court held "[t]he broad jurisdiction of PUCO over service-related matters does not affect 'the basic jurisdiction of the court of common pleas * * * in other areas of possible claims against utilities, including pure tort and contract claims.' " In deciding whether claims raised in a complaint are within the exclusive jurisdiction of PUCO or, instead, are pure tort and contract claims, a court is "not limited by the allegations in the complaint." *Id.* at ¶ 10. Rather, a court "must review the substance of the claims to determine if service-related issues are involved." *Id.* Accordingly, "[c]asting the allegations in the complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court when the basic claim is one relating to service, a claim which only the PUCO has jurisdiction to resolve." *Higgins* at 202.

{¶ 13} In *Allstate,* the Supreme Court adopted a two-part test from *Pacific Indemn. Ins. Co. v. Illum. Co.*, 8th Dist. No. 82074, 2003-Ohio-3954, to determine whether PUCO has exclusive jurisdiction over a case. The first part of the test "asks whether PUCO's administrative expertise is required to resolve the issue in dispute." *Corrigan* at ¶ 15. The second part of the test "is whether the act complained of constitutes a practice normally authorized by the utility." *Id.* at ¶ 16. Further, " '[i]f the answer to either question is in the negative, the claim is not within PUCO's exclusive jurisdiction.' " *Id.* at ¶ 12, quoting *Allstate* at ¶ 12-13.

{¶ 14} Under the facts in *Corrigan,* the plaintiffs sued a defendant electric utility to prevent the removal of a tree located within the utility's easement. In addressing whether the removal of the tree fell within the exclusive jurisdiction of PUCO, the Supreme Court considered provisions of the Ohio Administrative Code requiring utility companies "to maintain their transmission equipment, which includes developing a program for ' "[r]ight-of-way vegetation control." ' " *Mihiylov v. Ohio Edison Co.*, 9th Dist. No. 28140, 2017-Ohio-915, ¶ 6, quoting *Corrigan* at ¶ 15, quoting Ohio Adm. Code 4901:1-10-27(E)(1)(f). In *Corrigan,* the Supreme Court held that a utility company's "decision to remove a tree is governed by its vegetation-management plan, which is regulated by PUCO." *Id.* at ¶ 15. The court thus concluded, as to the first part of the *Allstate* test, "that PUCO's administrative expertise is required to resolve the issue of whether removal of a tree is reasonable." *Id.* With respect to the second part of the *Allstate* test, the court in *Corrigan* held that "[v]egetation management is necessary to maintain safe and reliable electrical service." *Id.* at ¶ 16. The Supreme Court therefore concluded the case fell within the exclusive jurisdiction of PUCO.

{¶ 15} In the present case, the trial court, in addressing the first question (i.e., whether PUCO's administrative expertise is required to resolve the issue in dispute), deemed it "clear * * * that vegetation control is the heart of this case," as both OSP and Asplundh "acted in response to the vegetation on Defendant Deems property and how it might and did impact the surrounding electrical hardware." (Decision at 4.) The trial court held that appellees' "actions in determining whether to remove the tree in 2015 when the Cicalas first noticed it and how they removed the tree in response to an electrical

emergency in 2017 directly relate to the administrative code" and, therefore, "these issues require PUCO's administrative expertise." (Decision at 5.)

{¶ 16} The evidence before the trial court included the affidavit of Jake Wilson, an employee of Asplundh. In his affidavit, Wilson averred that the "decision to not remove the tree located behind * * * S. Columbia Avenue, Bexley * * * was made in compliance with guidelines for vegetation management provided by AEP." (Wilson Aff. at ¶ 5.) Wilson further averred the "[m]ethods and practices used when removing downed trees from power lines to re-establish electric service are authorized by guidelines provided by AEP," and that the "methods and practices authorized by AEP's guidelines were used with respect to removal of the downed tree * * * on May 30, 2017." (Wilson Aff. at ¶ 6-7.)

{¶ 17} As cited above, the court in *Corrigan*, in addressing the first question under the *Allstate* test held that a utility company's "decision to remove a tree is governed by its vegetation-management plan, which is regulated by PUCO" and, therefore, "PUCO's administrative expertise is required to resolve the issue of whether removal of a tree is reasonable." *Corrigan* at ¶ 15. The court in *Corrigan* made clear that "vegetation management is manifestly service-related." *Id.* at ¶ 21.

{¶ 18} Based on the holding in *Corrigan,* we find no error with the trial court's determination in this case that a utility company's decision whether to remove a tree, made in accordance with OPC's vegetation-management guidelines, involves the expertise of PUCO. Similarly, we agree with the trial court that the methods and manner in which the fallen tree was removed from a power line to restore electric service implicates the issue of whether the response by appellees complied with industry standards and guidelines approved by PUCO. We therefore conclude the trial court, in addressing the first question under *Allstate,* did not err in finding that PUCO's expertise is required to resolve such issues. *See Pro Se Commercial* at ¶ 11 ("The determination of issues related to applicable laws and regulations, industry practices and standards, is best accomplished by PUCO with its expert staff technicians familiar with the utility commission provisions.").

{¶ 19} We next consider the second part of the *Allstate* inquiry (i.e., whether the acts complained of constitute a practice normally authorized by the utility). As previously noted, in *Corrigan,* the Supreme Court held that "[v]egetation management is necessary

to maintain safe and reliable electrical service." *Id.* at ¶ 16. In support, the Supreme Court cited Ohio Adm.Code 4901:1-10-27, which requires electric utility owners to "inspect" its facilities "in accordance with written programs" which " 'shall include * * * [r]ight-of-way vegetation control.' " *Id.* at ¶ 15, quoting Ohio Adm.Code 4901:1-10-27(D)(2) and (E)(1)(f).

{¶ 20} In the present case, the trial court relied on *Corrigan* in its determination that the assessment of vegetation by experts based on generally accepted industry practices and procedures, such as the action by Asplundh in 2015 in deciding whether to remove the tree, implicated a practice normally authorized by the utility. We find no error with that determination.

{¶ 21} As to the subsequent act of the utility in 2017, i.e., removing the tree to restore electrical service, we note that Ohio Adm.Code 4901:1-10-27(E)(1) requires each electric utility to "establish, maintain, and comply with written programs, policies, procedures, and schedules for the inspection, maintenance, repair, and replacement of its transmission and distribution circuits and equipment," and such programs are required to "establish preventative requirements for the electric utility to maintain safe and reliable service." Ohio Adm.Code 4901:1-10-27(E)(2) requires each electric utility to "file its inspection, maintenance, repair and replacement programs." Ohio Adm.Code 4901:1-10-08 sets forth requirements for electric utility companies in maintaining an emergency plan, including policies and procedures for responding to power outages and restoring service. Pursuant to Ohio Adm.Code 4901:1-10-08(C) "[e]ach electric utility shall follow and implement the procedures in its emergency plan." Ohio Adm.Code 4901:1-10-08(A) provides in part that each emergency plan shall include various elements, including "[a] description of the electric utility's requirements for restoring service" (Ohio Adm.Code 4901:1-10-08(A)(3)), "[p]erformance objectives for telephone response time to customer outage calls and procedures to accomplish those objectives" (Ohio Adm.Code 4901:1-10-08(A)(9)), and "policy and procedures for outage response and restoration of service by priority and a list of such priorities," including " 'live wire down' situations," and "[r]estoring service to the facilities designated" under the administrative code (Ohio Adm.Code 4901:1-10-08(A)(10)(a) and (b)). On review, we agree with the trial court's determination that an emergency response by a utility in clearing a downed tree from a

power line to restore electrical service constitutes a practice normally authorized by the utility.

{¶ 22} Accordingly, based on this court's de novo review, we find no error with the trial court's conclusion that the claims at issue involve vegetation management decisions and service related issues within the exclusive jurisdiction of PUCO.

{¶ 23} As noted, appellant also contends Asplundh is not a public utility subject to PUCO rules or jurisdiction. Appellant further maintains jurisdiction is proper in the common pleas court because the claims raised involve a subrogation issue with respect to the conduct of Asplundh.

{¶ 24} In response, Asplundh argues appellant ignores the provisions of R.C. 4905.55, which state in part: "The act, omission, or failure of any * * * agent * * * acting for or employed by a public utility * * *, while acting within the scope of his employment, is the act or failure of the public utility." Appellees also assert appellant did not raise a subrogation issue before the trial court and, therefore, waived such argument for the first time on appeal.

{¶ 25} At the outset, a review of the record supports appellees' contention that appellant did not raise before the trial court an argument it now raises on appeal, i.e., the contention that, because the case involves a subrogation claim, it presents a challenge to the jurisdiction of PUCO. In general, "a litigant's failure to raise an issue before the trial court waives the litigant's right to raise that issue on appeal." *Gentile v. Ristas*, 160 Ohio App.3d 765, 2005-Ohio-2197, ¶ 74 (10th Dist.), citing *Estate of Hood v. Rose*, 153 Ohio App.3d 199, 2003-Ohio-3268, ¶ 10 (4th Dist.). However, even considering the argument, we agree with appellees that the decision in *Allstate*, relied on by appellant, does not stand for the proposition that a subrogation claim is analyzed any differently from a claim brought directly by homeowners against a utility company. While the court in *Allstate* ultimately held that an insurer's claim of negligence was properly before the court of common pleas (because the expertise of PUCO was not required), the court made clear that "[t]his case comes down to a simple question: Is the claim underlying Allstate's subrogation claim service-related or is it a pure common-law tort claim?" *Allstate* at ¶ 1. As noted by OPC, the holding in *Allstate* was not based on the fact it had been brought by a subrogated carrier, and we are aware of no cases distinguishing the holding in *Corrigan*

on the basis that the claim was brought through subrogation as opposed to a direct claim for liability.

{¶ 26} We also find unpersuasive appellant's contention that PUCO lacks jurisdiction over Asplundh because it is a non-utility. As noted by appellees, various Ohio courts have found that claims involving private tree trimming companies, when acting on behalf of public utilities, are subject to the exclusive jurisdiction of PUCO. *See*, *e.g.*, *Delost v. Ohio Edison Co.*, 7th Dist. No. 10 MA 162, 2012-Ohio-4561, ¶ 25 (granting summary judgment in favor of utility company and tree trimmer "even though [tree trimmer] is not a public utility," where tree trimmer was performing vegetation management services for utility and utility company's decision to cut down tree was a vegetation management decision falling under the exclusive jurisdiction of PUCO); *Mihiylov* at ¶ 8 (reversing trial court's denial of motion to dismiss by utility company and tree trimming service based on reviewing court's determination that dispute "is within the exclusive jurisdiction of PUCO").

{¶ 27} Accordingly, finding no error with the trial court's determination that the claims involve service related issues within PUCO's exclusive jurisdiction, we further find no error by the trial court in granting appellees' motion to dismiss, and we overrule appellant's assignment of error.

{¶ 28} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and BEATTY BLUNT, JJ., concur.

_____